## Osburn's Appeal.

1. Where there is a simple devise or bequest to a certain person, described in the will as standing in a certain relation to the testator, and to the children (as a class) of another person standing in the same relation, they all take per capita; but this rule of construction will yield to slight evidence apparent in the context of a different intention.

2. A. died, leaving a daughter, B., and a grandson, C., the son of a deceased daughter, D. He devised and bequeathed a house, furniture, etc., to B., and the sum of $30,000 to C., "only heir of my late daughter, D." He further expressed a preference that his estate should not be divided until the youngest child of the said B. arrived at the age of twenty-one years, at which time, the entire residuary estate was "to be equally divided between the heirs of the said B., that may be living at the time of said division and the said C., each to share and share alike."

*Held*, that the language of the will sufficiently indicated an intention that the residuary estate should be divided per stirpes and not per capita, to overcome the general canon of construction stated in the first clause of this syllabus.

November 12th 1883. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett and Clark, JJ. Green, J., absent.

[Osburn's Appeal.]

APPEAL from the Orphans' Court of *Allegheny county :* Of October and November Term 1883, No. 228.

This was an appeal by Franklin Osburn and D. N. White, executors of the last will of Griswold E. Warner, deceased, from a decree of the said court in the matter of a petition by Harry G. McCartney, restraining them from making a per capita distribution of the residuary estate of decedent and adjudging that under said will the residuary estate should be distributed per stirpes.   Said petition set forth that the executors contemplated a distribution per capita and prayed that they might be restrained from so doing and for a construction of the will.

The facts were as follows : Griswold E. Warner, the testator, died March 7th 1873, leaving surviving him a daughter, Mrs. Henrietta W. Osburn, and Harry G. McCartney, the son of a deceased daughter.   At the time of testator's death, Mrs. Osburn was the mother of seven children, and another child was subsequently born.   By the first clause of his will, the testator gave a house, ground, furniture therein, etc., to Mrs. Osburn, and by the second bequeathed to "Harry G. McCartney, minor and only heir of my late daughter, Jennie W. McCartney, wife of the late John G. McCartney, deceased, in addition to such other bequests hereinafter made, thirty thousand dollars, which my executors are requested to pay over to him, the said Harry, when he arrives at the age of twenty-one."   The third and fourth clauses provided :

3. " The remainder of my estate, both real and personal, that I may possess at the time of my decease, my executors, if they should think it advisable to sell any or all of my real estate, they are authorized to do so, and all moneys received from such sales, and all other money that may from time to time come into the hands of my executors, I wish put at interest until there is a final division made of my estate, which I wish to be *equally divided between the heirs of the said Henrietta that may be living at the time of said division and the said Harry G. McCartney, each to share and share alike.*

4. " I would rather prefer not to have a division made of my estate until the youngest child of the said Henrietta arrives at the age of twenty-one years.   But, should any of the heirs, after arriving to that age, wish to engage in business, and wish to realize any portion of their interest in said estate, my executors can give them such an amount as they may think proper, and take their individual note or notes, bearing interest, to be added thereto, and deducted from their respective portions of said estate, on the final division of the same."

At the time of testator's death, all of his grandchildren were minors.   In October 1883, all but four of said children having

[Osburn's Appeal.]

attained their majority, the executors proposed to make a distribution by dividing the residuary estate into nine equal parts, and awarding one-ninth part thereof to Harry G. McCartney and one-ninth part to each of Mrs. Osburn's eight children; whereupon Harry G. McCartney filed this petition praying as above.

The court (HAWKINS, P. J.) held, in an opinion filed, that the testator intended to divide his residuary estate equally between Harry G. McCartney on the one part and the children of Mrs. Osburn on the other, each class to share and share alike. He therefore entered a decree restraining the executors from distributing the estate in any other proportions. Whereupon the executors took this appeal, assigning for error the entry of said decree.

*Geo. Shiras, Jr.* and *Slagle* (with them *Wiley*), for the appellants.—It is clear from the entire will that the word "heirs" should be construed "children." Such a use of the word is not unusual and has been sustained in many cases. The canon of construction, therefore, applies to this will that "where there is a simple devise or bequest to a person and the children of another person, they take per capita and not per stirpes:" 2 Jar. on Wills 194; McNeilledge *v.* Galbraith, 8 S. & R. 46; McNeilledge *v.* Barclay, 11 S. &. R. 103; Hill *v.* Bowers, 120 Mass. 135; Nichols *v.* Denny, 37 Miss. 59. But this is not a simple devise to persons so described. It is qualified by language, which has always been held to indicate a per capita division. To express that intention, no apter words could be employed than "to be equally divided," "share and share alike," "each:" Bender's Appeal, 3 Grant 212; Farmer *v.* Kimball, 46 N. H. 439; Myres *v.* Myres, 23 How. Prac. 410; Barnes *v.* Patch, 8 Ves. Jr. 604; Gross' Estate, 10 Pa. St. 362; Huston *v.* Crook, 38 Ohio St. 328; Minter's Appeal, 40 Pa. St. 115; Lee *v.* Lee, 39 Barb. 172. It is a familiar rule of construction, whether of wills, deeds, or agreements, that every word shall be regarded as having been used for a purpose, and be accorded its appropriate effect: Griffith *v.* Woodward, 1 Yeates 319. If the will of G. E. Warner is to be construed as claimed by the appellee, the full meaning would have been expressed by the words "divided between," and the use of the words "equally," "each to share and share alike," would have been worse than useless, because, so far from being necessary to the idea, they are merely confusing. Giving an appropriate effect to these expressions, any one of them indicates an intention to treat the parties referred to as individuals, and this is strengthened by the manner in which they are used. The use of the words "each to share and share alike," after the expres-

[Osburn's Appeal.]

sion of the general idea of division, shows clearly that the testator's mind did not stop there, but passed on to a more detailed division into equal shares for each. This idea is referred to in the case of Dible *v.* Lauffer, 2 W. N. C. 236.

It is to be presumed, moreover, in the absence of clear expressions to the contrary, that as all the distributees stand in the same degree to the testator, a per capita distribution was intended. This is the policy of our law as shown by our legislation and the decisions in numerous cases, and this presumption is strongly supported by the express language of this will.

The fact that Henrietta Osburn is living, brings the case within another rule of construction, that where the testator designates the objects of his bounty, by their relation to a living ancestor, the intention to provide a per capita division will be presumed: Risk's Appeal, 52 Pa. St. 271; Ward *v.* Stowe, 3 Hawks 604; Blackler *v.* Webb, 2 P. Wms. 383; Collins *v.* Hoxie, 9 Paige 81. That the testator intended that these grandchildren should take as a single class is further evidenced by the fact that Harry McCartney is classed with them in other provisions of the will. The provision postponing the enjoyment of his share by Harry McCartney until the youngest child of Henrietta Osburn should arrive at maturity, is significant. If he were not one with them, it would scarcely have occurred to the testator to withhold his half of the estate for years after his majority, to await a suitable time for the vesting of the interests of Mrs. Osburn's children.

The error into which the court below fell was in holding that a distribution per capita, will yield to a very faint glimpse of a different intention in the will, as if such distribution were under the special disfavor of the courts, and however clearly indicated by the words of the bequest, was to be set aside, if by the most careful scrutiny other language could be found which was capable of other construction. There is no such principle in the books. On the contrary, the per capita rule is favored, as is evidenced by the provisions of the statute, and the many cases in which it is said to be presumed: Pemberton *v.* Parke, 5 Binney 601; McNeilledge *v.* Galbraith, 8 S. & R. 43; McNeilledge *v.* Barclay, 11 S. & R. 103; Gest *v.* Way, 2 Whar. 445; Bender's Appeal, 3 Grant 210; Witmer *v.* Ebersole, 5 Pa. St. 458; Harris Estate, 74 Pa. St. 452; Dible's Appeal, 2 W. N. C. 236; S. C., 32 P. F. S. 279; Bittner's Appeal, 3 W. N. C. 70.

*D. T. Watson,* for the appellee.—The first and second clause of the will show an intention to equalize Mrs. Osburn and Harry G. McCartney, and thus rebut the construction that the testator intended a per capita distribution. To Mrs.

Osburn he gives property, whose value is estimated at $30,000 and to Harry G. McCartney he gives the sum of $30,000. Obviously, Harry McCartney was not regarded by the testator as being in the same class as the Osburn children. The will then proceeds to divide the residuary estate between " the heirs of the said Henrietta," and " the said Harry G. McCartney, minor and only heir of my late daughter, Jennie W. McCartney." Taken together with the first two clauses of the will, there is more than a " faint glimpse of an intention " to distribute per stirpes, there is a positive expression of that intention. Similar expressions were held to indicate a distribution per stirpes in Lachland v. Downing. 11 B. Monroe 32 ; Lyon v. Acker, 33 Conn. 222 ; Witmer v. Ebersole, 5 Barr 458; Baskin's Appeal, 3 Barr 304.

Chief Justice MERCUR delivered the opinion of the court, January 7th 1884.

This contention arises as to the manner in which the residuary estate of Griswold E. Warner, deceased, shall be distributed. That is, whether it shall be made among those entitled to share therein, according to the per capita or the per stirpes rule.

At the time of the death of the testator he left one daughter, Mrs. Henrietta Osburn, who then had seven children (she has given birth to one since), and Harry G. McCartney, the son of a deceased daughter. All the grandchildren were under the age of twenty-one years.

The residuary estate is disposed of under the third paragraph of the will, but the division thereof was not intended to be made until some years after the death of the testator. In the next paragraph he declares : " I would rather prefer not to have a division made of my estate until the youngest child of the said Henrietta arrives at the age of twenty-one years." The third paragraph authorizes his executors, if they think it advisable, to sell his real estate, and the money received therefrom, and from all other sources, he says, " I wish put at interest until there is a final division made of my estate, which I wish to be equally divided between the heirs of the said Henrietta that may be living at the time of said division, and the said Harry G. McCartney, each to share and share alike."

It will be observed, standing by itself alone, this clause makes no reference to the relationship which any of the devisees bear to the testator. Referring to the first paragraph we see he therein devised to his daughter, Henrietta W. Osburn, the house she then occupied, together with one and one-half acres of ground attached thereto ; and also all the furniture, bedding, library, etc., in the house which the testator then

8 OUTERBRIDGE—41

occupied or might occupy at the time of his decease. .In the second paragraph he gave to " Harry G. McCartney, minor and only heir of my late daughter, Jennie W. McCartney, . . . . . deceased, in addition to such other bequests hereinafter .made, .thirty thousand dollars, which my executors are requested to pay over to him, the said Harry, when he arrives at the age of twenty-one years, together with interest on the same," to be paid yearly, or so much thereof as may be required for his support and education, and the residue thereof to be put at interest for his benefit.

Thus it appears the testator makes one general division in the objects of his bounty.  To his only surviving daughter he gives certain property specified.  To the only heir of his deceased daughter a specific sum of money.  This heir is mentioned by name.  In the specific devise to Henrietta no reference is made to her heirs or to her children.  The foundation of the per capita rule of distribution rests in a large measure on the presumption, that when the beneficiaries are in equal degrees of relationship to the testator his affection for each is equal, and therefore he will desire to benefit each equally.  In these two clauses the testator wholly ignores the children of Henrietta as effectually as if they had not existed.  So far, all pre-sumption of affection towards her children or a desire to make them his beneficiaries, is clearly rebutted.

It is contended by the appellants that the general rule is, when a devise or bequest is made to a person described as standing in a certain relation to the testator, and the children of another person standing in the same relation, that they all take per capita.

The rule is so declared in 2 Jar. on Wills 756 ; but on the next page it is said " this mode of construction will yield to a very faint glimpse of a different intention in the context." Conceding the correctness of this general rule which may so easily be set aside, let us return to the language of the third paragraph.  There is no direction therein that the estate be divided between the children of Henrietta ; but between her " heirs " that may be living at the time of said division.  It is true the fourth paragraph does indicate, in speaking of the time of division, that children and heirs of Henrietta, are for that purpose, referred to as the same persons ; yet in the devising clause of the previous paragraph the word " heirs " in its most general sense is used.  No language therein contained indicates that it means children or issue only of Henrietta.  It is broad enough to apply to all of her heirs who may be living when the division shall be made.

Still further, conceding that the testator may have meant children of Henrietta ; yet he refers to them as a class only.  No

names nor sex are mentioned.   They are her heirs or children as a class, all representing her, and deriving their share as her heirs, and presumably no greater share than she would otherwise have taken.   Moreover, this devise or bequest is to Harry G. McCartney by name, and not merely as his grandson.   The gift to him is absolute.   It is not contingent that he be living when the division shall be made.   It vested in him. at once. The possession thereof only was postponed.   To adopt the per capita rule contended for, would strike down the absolute devise of one-half the estate to Harry, and cause his share to increase or diminish as the number of the children of Henrietta might increase by birth or decrease by death.   Such a result as this was clearly not intended by the testator, and finds no warrant in any of the language used.   Conceding, then, the correctness of the rule urged by the appellants, that language somewhat similar has often been held to presumptively distribute the estate per capita; yet a careful consideration of these words, and of the manifest intent and spirit of the whole will, convinces us that such was not the intention of the testator.   There is much more than "a very faint glimpse of a different intention."   The evidence that a per stirpes distribution was intended clearly preponderates.

We do not think the conclusion at which we have arrived is weakened by the expression "each to share and share alike." There was to be but one division.   It was to divide the fund between the heirs of Henrietta of the one part, and Harry of the other part.   In this division each class was to share and share alike.   Harry was to have one share, and all the heirs of Henrietta the other share.   The division was to be "between" the two classes.

Admitting the general rule of law to be as stated by the appellants, and ruled by the authorities cited by them, yet they do not rule this case.   The first great rule in the interpretation of a will is to seek for the intention of the testator.   When that intention can be ascertained from the will itself, and is inconsistent with the artificial rule pressed by the appellants, the testator's intention must prevail.   In the view we take, it is unnecessary to refer seriatim to the authorities cited by the appellants.   Due effect may be given to them, and our conclusion stand.

It is rather difficult under the authorities, to indicate any fixed line between language which shall establish a per capita distribution on one side, and a per stirpes distribution on the other.   That in the present case, the whole will sufficiently shows the testator intended a per stirpes distribution we are well satisfied.   This conclusion is sustained by Lachland v. Downing, 11 B. Monroe 32 ; Walker v. Griffin's heirs, 11 Wheat.

[Osburn's Appeal.]

375; Alder *v.* Beall, 11 Gill & Johnson 123 : Baskin's Appeal, 3 Barr 304 ; Minter's Appeal, 4 Wright 111 ; Risk's Appeal, 2 P. F. Smith 269 ; Young's Appeal, 2 Norris 59. The application of these authorities to the facts before us is in no wise impaired by Dible's Estate, 32 P. F. Smith 279. We see no error in the decree.

Decree affirmed and appeal dismissed at the costs of the appellants.