## ESTATE OF G. E. WARNER, DECEASED.

### APPEAL BY FRANKLIN OSBURN, EXR., FROM THE ORPHANS' COURT OF ALLEGHENY COUNTY.

Argued October 29, 1889—Decided November 11, 1889.

(*a*) The will of a testator directed a final distribution of his residuary estate, but provided: "I would rather prefer not to have a division made of my estate, until the youngest child of H. arrives at the age of twenty-one years."

1. Such expression of preference, being merely precatory, and addressed to the devisees and not to the executors, was not binding upon the latter, and they have no power to postpone distribution to the period referred to in the provision.

2. The executor having failed to make distribution as directed by the decree of the Orphans' Court, affirmed by the Supreme Court: Osburn's App., 104 Pa. 637, he became personally chargeable with the costs of a second proceeding against him to enforce it.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 48 October Term 1889, Sup. Ct.; court below, No. 484 March Term 1888, O. C.

On May 2, 1888, Harry G. McCartney, a residuary devisee under the will of Griswold E. Warner, deceased, presented his petition praying upon the facts therein set out that the court order and direct Franklin Osburn, surviving executor of the will of said decedent, to forthwith make distribution of the residuary real and personal estate of said decedent, so that the petitioner should receive the one half part thereof, and the children of Henrietta W. Osburn the other one half part thereof, and for such other and further relief as the circumstances of this case might require.

An answer having been filed, a hearing was had and after argument, the court, HAWKINS, P. J., on October 16, 1888, filed the following opinion and decree:

#### FINDINGS OF FACT.

The question involved in this case is, whether or not, under the will of Judge Warner, his grandson Harry G. McCartney,

Opinion of Court below.

is now entitled to receive his share in distribution? The material facts out of which this question arises are these:

Judge Warner by his will having empowered his executors to make sales of his real estate, directed that they should invest the proceeds " until the final division " made of his residuary estate, " which (estate) I wish to be equally divided between the heirs of " his daughter Henrietta Osburn, who might be living at the time of said division, and Harry G. McCartney, son of his deceased daughter Jennie W. McCartney, " each to share and share alike." In the following clause he proceeds thus: " I would rather prefer not to have a division made of my estate until the youngest child of Henrietta arrives at the age of twenty-one years. But should any of the heirs, after arriving to that age, wish to engage in business, and wish to realize any portion of their interest in said estate, my executors can give them such an amount as they may think proper, and take their individual note or notes, bearing interest to be added thereto, and deducted from their respective portions of said estate on the final division of the same. And should any of said heirs aforesaid, at the time of the final division of said estate, be considered by my executors to be incompetent or incapacitated, either in mind or body, or from intemperance, to take charge or manage their respective interests in said estate, my executors are hereby requested to pay such nothing more than the interest annually on their respective portions of said estate, until said incapacity does no longer exist." He therefore appointed his son-in-law, Franklin Osburn, and David N. White, executors.

Mrs. Osburn is 57 years of age, and has eight children, the youngest of whom was born in 1874.

At No. 349 March Term 1883, of this court, a petition was presented on behalf of said Harry G. McCartney, setting forth inter alia, that said executors proposed making a distribution per capita, of said estate, and asking that they be restrained therefrom. The executors admitted the purpose and claimed that this was in accordance with a proper construction of the will. This court held that the division should be into two equal parts, one of which should belong to the heirs of Mrs. Osburn, and the other to the said Harry G. McCartney; and made a decree restraining said executors from making any

other distribution. This decree was upon appeal to the Supreme Court affirmed: Osburn's App., 104 Pa. 637.

There was no question of the time of distribution raised or decided in that case.

After this decision, no further steps were taken by the executors towards division, in respect of that part of the estate located in Pennsylvania, so far as Harry G. McCartney was concerned, but they paid large sums in distribution to the Osburn children.

In 1884, Mr. Osburn and Mr. McCartney met in Chicago, Illinois, and entered into negotiations for the partition of the land which belonged to the estate, located there. They were unable to agree upon a basis of valuation, and Mr. McCartney thereupon insisted that there should be no sale. Mr. Osburn then consulted his counsel, submitted to him copies of the paper-book in the proceedings which, as above stated, had been instituted in this court, in reference to the construction of the will of Judge Warner, and was advised that the will must be construed by the Supreme Court [of Illinois] in order to give title to the different heirs, to the land there; and that in his opinion, no partition could be made until Mrs. Osburn's youngest child attained majority, but that this question also must be decided by that court. A bill was thereupon filed with this view, on behalf of the executors and the children of Mrs. Osburn, against Mr. McCartney, in which it was alleged, inter alia, that the proper construction of Judge Warner's will was, that distribution of his residuary estate should be per capita and not per stirpes. Mr. Osburn testified in reference to the purpose of this bill, at a hearing in this court: "It was not my purpose at all in the proceedings in Chicago to obtain partition, but simply to obtain construction of the will, just as McCartney did here. . . . . I wanted a different construction of the will from that given here, and that is very likely the reason why the papers were drawn as they were, without reference to the injunction made by the court here."

Part of the land which was the subject of this bill, was bought by Judge Warner, and part by his executors, with personal assets. The Supreme Court of Illinois held: (1) That Judge Warner's grandchildren took his real estate per capita, but decided, upon a bare reference by counsel in their argument, that

Opinion of Court below.

the time for division would not arrive until Mrs. Osburn's youngest child attained majority; and (2) that the personal estate, consisting of the land bought by the executors, should be divided forthwith amongst said grandchildren, per stirpes, which was accordingly done. [See: McCartney v. Osburn, 118 Ill. 403; Osburn v. McCartney, 121 Ill. 408.]

Mr. McCartney attained his majority in 1882, and now asks that "final division" of the estate be made. The surviving executor, Franklin Osburn, resists the application, upon the ground that such division cannot be made until the youngest child of Mrs. Osburn attains majority, and asks that the former decision of this and the Supreme Court, in Osburn's Appeal, be reconsidered and reversed.

CONCLUSIONS OF LAW.

1. The reasons for present division of this estate, as between Harry G. McCartney and the "heirs" of Mrs. Osburn, greatly preponderate. Mr. McCartney has an absolute and vested interest under the will: Osburn's App., 104 Pa. 637; he has attained his majority, and it does not appear that he is "incompetent or incapacitated, either in mind or in body, or from intemperance, to take charge of or manage his interest." There is no allegation that such division would be prejudicial in any way to the estate; and there is no prohibition against such division contained in the will. So far as Mr. McCartney is concerned, there is no reason for the existence of any trust.

The executors are not given expressly, nor by necessary implication, control over the time of division. They are, it is true, expressly given power to make sales of real estate, and to invest the proceeds until "final division," and to make advancements to the "heirs" upon the security of their individual notes; but manifestly this gives them no power to determine when the final division shall take place. The whole administration, including the exercise of these special powers, might have been ended within the year after Judge Warner's death, without, so far as appears, prejudice to any interest. The expression of a preference by testator, that the "final division" should not take place until the youngest child of Mrs. Osburn should attain majority, was not necessarily directed to the executors, but rather to the "heirs," and, being merely precatory, it is not to be regarded as binding. Even if addressed to the

executors, it gave them no power to postpone peremptorily the final division: Rawle's App., 119 Pa. 100.

But, assume that the executors were given discretionary power in the premises. They have made a solemn declaration in this and the Supreme Court, that the time for final division had arrived, and have not only since given no sufficient reason for postponement of that time, but have actually made division of a large part of the estate. This implies that in the opinion of the executors, final division could then have been made without prejudice to the estate, and that Mr. McCartney was "competent to take charge of, and manage" his interest; and there is no allegation that these conditions have since changed.

If the solemn declaration of the executors, made as above stated, was not an exhaustion of any alleged discretionary power to determine the time of final division of the estate, their conduct must at least be regarded as either arbitrary or capricious, and cannot be suffered to prejudice the rights of any of their cestuis que trust: Hill on Trustees, 494. If it was wise then, it is wise now, to make final division. There is no reason apparent on the face of the will, in the condition of the estate, nor in the character of this petitioner, why it should not now be made; and there is every reason why it should now be made. Judge Warner has been dead 15 years, and this petitioner's interest has been compelled to bear its proportion of the costs and expenses of administration, during the whole of that period. Mr. McCartney has attained the age at which the law gave him the right "to take charge of and manage" his property: and there is no reason why he should not exercise that right here and now. The will gave him an absolute and present vested interest in the estate. There is therefore no reason for the continued existence of a trust so far as he is concerned. It is the policy of the law to encourage the distribution and division of estates and the dissolution of trusts.

2. The question of the proportions in which the beneficiaries named in the will of Judge Warner take, was conclusively settled in Osburn's App., supra.

—A final decree was thereupon entered: 1. That Franklin Osburn, executor, proceed forthwith to make division of the personal estate of Griswold E. Warner, deceased, as between the heirs of Henrietta Osburn and Harry G. McCartney, and

hand over the share of said Harry G. McCartney to him, being the equal one half part thereof.[1]  2. That said Franklin Osburn join in the partition in this court of the real estate, of which Griswold E. Warner died seised in the state of Pennsylvania, among the heirs of Mrs. Henrietta Osburn and the said H. G. McCartney.[4]  3. That the costs of the proceeding be paid out of the estate.

Thereupon the respondent took this appeal, specifying that the court erred:

1, 4. In the portions of the decree.[1] [4]

2. In not dismissing the petition.

3. In not holding that the period for distribution under the will of Griswold E. Warner had not arrived.

*Mr. John S. Ferguson,* for the appellant.

Counsel cited: Osburn's App., 104 Pa. 637; McCartney v. Osburn, 118 Ill. 403; Osburn v. McCartney, 121 Ill. 408; Hill v. Chapman, 1 Ves. 405, n. B; Jenkins v. Fryer, 4 Paige 47; Butler v. Ommoney, 4 Russ. 70; 2 Jarman on Wills, 757; Kelly v. Vigas, 112 Ill. 242; Cheney v. Zeese, 108 Ill. 473; Huston v. Cook, 38 Ohio 328; Lugar v. Harmon, 1 Cox 250; Ingram v. Smith, 1 Head (T.) 411; Kean v. Roe, 2 Harr. 103; Bryant v. Scott, 1 Dev. & B. Eq. 155 (28 Am. Dec. 590); Lee v. Lee, 39 Barb. 172; Burnet v. Burnet, 30 N. J. Eq. 595; Brittain v. Carson, 46 Md. 186; Richards v. Miller, 62 Ill. 420; Pitney v. Brown, 44 Ill. 363; Hawkins on Wills, 113; Wigram on Wills, 324.

*Mr. D. T. Watson,* for the appellee:

Counsel cited: (1) 2 Story's Eq. J., § 1069; Gilbert v. Chapin, 19 Conn. 351; Pennock's Est., 20 Pa. 268, 280; Chew v. Chew, 28 Pa. 17; Pulpress v. Church, 48 Pa. 210; Gosling v. Gosling, Johns. (Eng.) 272; Saunders v. Vantier, 4 Beav. 116; Culbertson's App., 76 Pa. 148; Hopkins v. Glunt, 111 Pa. 288, 290.; Bowlby v. Thunder, 105 Pa. 173; Philadelphia v. Girard Heirs, 45 Pa. 27; Hillyard v. Miller, 10 Pa. 326; Washington's Est., 75 Pa. 106; McKee's App., 96 Pa. 284; Hawley v. Jones, 5 Paige 480. (2) Osburn's App., 104 Pa. 637; Greathead v. Bromley, 7 Term R. 451; Broom's Leg. M.,

*329, 330, 331; 2 Story's Eq. J., § 899; Young's App., 83 Pa. 63.

PER CURIAM:

It is not needed that we add anything to the opinion of the learned judge of the Orphans' Court in this case. He has fully vindicated his decree. Upon one point only do we differ from him. He ordered that the costs of this proceeding should be paid out of the estate. In an ordinary case, this would be correct. In the case in hand, however, the costs have been incurred through the conduct of the executor himself. All that was necessary for his guidance was ruled when the case was here before. See Osburn's App., 104 Pa. 637. The executor, however, appears not to have been satisfied with our rulings, and to have taken a different view of the law. We have nothing to say in regard to this, beyond the fact that we cannot permit him to waste the money of the estate in seeking to establish his own views of the law. If he desires to indulge in litigation as a luxury, he must pay for it.

It is ordered that the costs of this proceeding, both here and below, be paid by the executor personally, and not out of the estate; and with this modification the decree is affirmed.