## Sipe's Estate.

*Will—Legacies—Distribution—Per stirpes—Per capita—Analogy of the statute.*

Testatrix after having directed that her estate should be converted into money, gave, devised and bequeathed it as follows: "To my brother B, to the children of E, my sister, to the children of my sister L, and to the children of M, (another brother), share and share alike."   B had no children, E, had seven, L, had five and M, had two.   E, L, and M, were deceased. No brother or sister or nephew or niece was excluded.   *Held*, that distribution following the analogy of the statute, should be made per stirpes and not per capita.

The statute of distribution governs in all cases where there is no will, and where there is one, and the testator's intention is in doubt, the statute is a safe guide.

Argued March 15, 1905.   Appeal, No. 20, March T., 1905,
by George B. Sipe et al., from decree of O. C. York Co., dis-
missing exceptions to auditor's report in Estate of Catharine
Sipe, deceased.   Before RICE, P. J., BEAVER, ORLADY, SMITH,
PORTER and HENDERSON, JJ.   Affirmed.

Exceptions to report of Wm. A. Miller, Esq., auditor.   Be-
fore BITTENGER, P. J.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to auditor's
report.

*Edward Chapin*, for appellant.—In Pennsylvania each will stands alone and should be decided upon its own peculiar language. The intention of the testator as drawn from the language of the will governs in all cases : Reck's App., 78 Pa. 432 ; Woelpper's App., 126 Pa. 562 ; Huber's App., 80 Pa. 348 ; Reilly's Estate, 200 Pa. 288.

Distribution should have been made per capita : McNeilledge v. Galbraith, 8 S. & R. 43 ; Hicks's Est., 134 Pa. 507.; Warrington v. Warrington, 2 Hare, 54 ; Dible's Est., 81* Pa. 279 ; Priester's Est., 23 Pa. Superior Ct. 386 ; Harris's Est., 74 Pa. 452.

*J. St. Clair McCall*, for appellees.—While the court will not hesitate to allow a testatrix to alter the descents provided in the statute, yet, on the other hand, the court will not presume from the fact that the testatrix made a will, that she meant its construction to be at all points inconsistent with the statute. In a word, a per capita construction is not to be forced upon a particular devise, because the devisees under that clause, had they taken under the statute, would have been per stirpes : Risk's App., 52 Pa. 269 ; Miller's Estate, 26 Pa. Superior Ct. 453 ; Baskin's App., 3 Pa. 304; Osburn's App., 104 Pa. 637 ; Fissel's Appeal, 27 Pa. 55 ; Gring's Appeal, 31 Pa. 292; Minter's Appeal, 40 Pa. 111 ; Risk's Appeal, 52 Pa. 269 ; Harris's Estate, 74 Pa. 452 ; Hock's Estate, 154 Pa. 417 ; Ashburner's Estate, 159 Pa. 545 ; Scott's Estate, 163 Pa. 165 ; Miller's Est., No. 2, 26 Pa. Superior Ct. 453.

OPINION BY RICE, P. J., March 12, 1906 :

The testatrix, a widow, died without issue, leaving to survive her Daniel Boeckel, a brother, seven nephews and nieces, children of Elizabeth Sipe, a deceased sister, five nephews and nieces, children of Louisa Sipe, a deceased sister, and a nephew and niece, children of Michael Boeckel, a deceased brother. She directed by her will the place and manner of her burial, the payment of her debts and funeral expenses, and the payment of $50.00 to the church at which she was to be buried for the care of graves, and then directed her executor to convert all her estate into money as soon as possible either by public or private sale. The will then proceeds, " and after the same

hath been converted as aforesaid I give, devise and bequeath as follows: To my brother Daniel Boeckel, to the children of Elizabeth my sister intermarried with George Sipe and to the children of my sister Louisa intermarried with John Sipe and to the children of Michael Boeckel share and share alike." The question is whether the distribution should be made per capita or per stirpes. The auditor reported that it should be made per stirpes and his report was confirmed by the court in a well considered opinion rendered by its learned president.

It is reasonable to presume that the testatrix knew the statutory rule of distribution, but the fact that she made a will is not, of itself, ground for any certain inference that she intended to depart therefrom in all particulars, and to distribute her estate per capita, especially as the directions referred to above and the appointment of an executor show that she had other adequate motives for making a will. "Whilst we are not to hesitate to allow him (a testator) to alter the descents provided in the statute, we are not, on the other hand, to presume, from the fact that he made a will, that he meant its construction should be at all possible points inconsistent with the statute:" Risk's Appeal, 52 Pa. 269.

Great stress is laid on the words "share and share alike " as indicative of an intention that the share of each beneficiary under the will should be equal to the share of ever other beneficiary; in other words, that the share of each nephew and niece should be equal to the share of the only surviving brother of the testatrix. But this expression would be appropriate if the testatrix had in mind a division among classes; at least it is not conclusive of the question whether the distribution was intended to be per stirpes or per capita. In the case just cited the provision of the will that the proceeds of the sale of testator's real estate, after deducting $1,200, should " be equally divided between my beloved children, George and Joseph, and the children of my beloved daughter Catharine " was interpreted to mean a division per stirpes. The word "equally," said Chief Justice WOODWARD, "means that the class shall share equally with George and Joseph. This is the grammatical construction of this adverb, for the names George and Joseph and the class are connected by copulatives that apply all the qualifying terms to them alike." In a case where the will di-

rected the residue of the estate to be divided " equally, share and share alike, amongst the children of my brother, Adam Minter, deceased, and the children of my brother Martin G. Minter, deceased, and to my sister Barbara Saval," a distribution per stirpes was sustained notwithstanding the fact that the sister Barbara died before the death of the testator.   After quoting the foregoing provision Chief Justice LOWRIE said, " and by thus expressing himself, he seems to make three classes and three equal shares : "  Minter's Appeal, 40 Pa. 111. So where the testator directed his residuary estate " to be equally divided between the heirs of the said Henrietta "—a daughter—" that may be living at the time of said division and the said Harry G. McCartney,"—a grandson—" each to share alike," it was held that the expression " each to share alike " did not weaken the conclusion that the distribution was to be per stirpes.   " There was to be but one division.   It was to divide the fund between the heirs of Henrietta of the one part, and Harry of the other part.   In this division each class was to share and share alike.   Harry was to have one share, and all the heirs of Henrietta the other share.   The division was to be ' between ' the two classes : "  Osburn's Appeal, 104 Pa. 637. Where the testator bequeathed his estate to his " daughters Harriet and Maria, and the children and heirs of my sons Benjamin and Charles, to be equally divided between them," and at the date of the testator's will his two sons were dead, it was held that distribution should be made per stirpes :  Ashburner's Estate, 159 Pa. 545.   Judge PENROSE, whose opinion was adopted by the Supreme Court, said :  " The effect is not altered by the direction to divide ' equally between them,' since these words are no less appropriate to a division among classes than to division among individuals."   In Scott's Estate, 163 Pa. 165, the words " each to take share and share alike " were construed in the connection in which they were used to mean a distribution per capita, but Justice FELL, who wrote the opinion, conceded that the expression " share and share alike," standing alone, might refer to a division among classes as well as among individuals.   We think the same may be said of the same expression as it is used in the will under construction.

Looking then at the similarity of the form of the gift to that construed in Fissel's Appeal, 27 Pa. 55, Minter's Appeal, 40 Pa.

111, Risk's Appeal, 52 Pa. 269, and Miller's Est. No. 2, 26 Pa. Superior Ct. 453, observing that the nephews and nieces are not designated by name but are grouped in classes, each class being designated by the name of the deceased parent, and bearing in mind that no brother or sister or nephew or niece is excluded, there is little room for doubting the correctness of the construction put upon the words by the auditor and the court, which resulted in an equal distribution among the classes thus carefully designated. Dible's Estate, 81* Pa. 279, seems at first blush to give some support to the opposite contention, but as the appellee's counsel correctly says of that case, the beneficiaries were specifically named without reference to their parents, while in the case at bar each class is designated by reference to the deceased parents of the children, who are the beneficiaries, thus indicating that the children are to take as representatives of their parents. Moreover, that decision, as shown by the opinion of the court, was based on a distinction between the form of the gift then under construction and the one construed in Minter's Appeal, and does not weaken the authority of the last cited case in any particular. Priester's Estate, 23 Pa. Superior Ct. 386, differs from this case very materially as will be seen by a comparison of the gifts under construction without any explanatory remarks. In that case also the authority of Minter's Appeal was conceded. In distinguishing it from the case being decided Judge HENDERSON said: " There the bequest was to a group, not by name, but by description of the person, a class which might be diminished." This statement is equally appropriate to distinguish this case from Priester's Estate. It is quite apparent from the context, taken as a whole, that the words " heirs of Caroline Priester " were used for the purpose of identification, and not to indicate that the testatrix intended to create a class. In Miller's Estate, 26 Pa. Superior Ct. 453, the doctrine of Minter's Appeal, Hiestand v. Meyer, 150 Pa. 501, and Osburn's Appeal, 104 Pa. 637, was followed and applied in the construction of the will although the result was to bring into the distribution a stranger to the blood of the testator.

The conclusion at which we have arrived is, in our opinion, in accordance with the actual intention of the testatrix ; but it is not necessary to be able to assert with absolute certainty

that the testatrix intended not to place the children of her deceased brother and sisters on a footing of equality with her sole surviving brother. It is sufficient to say that her will furnishes strong probability that she desired her property to be distributed amongst them as it would be under the statute of distributions. The statute of distributions governs in all cases where there is no will; and where there is one, and the testator's intention is in doubt, the statute is a safe guide : Ashburner's Estate, 159 Pa. 545. This doctrine has been recognized in a multitude of cases. In Scott's Estate it was said that when there is a testamentary gift to one person, and to the children of another person who stand in the same relation to the testator, the donees take per capita. This rule, however, under the English authorities yields to slight indications of a contrary intent; and in Pennsylvania the contrary intent is inferred in cases of doubtful interpretation where under the intestate laws the distribution would be made per stirpes as in the case of a gift to a son or brother of the testator and to the children or heirs of a deceased son or brother.

The decree is affirmed and appeal dismissed at the costs of the appellant.