## McElree's Estate.

*Hamilton & Pipes*, for accountants; *J. R. Irwin Knox*, for Nellie McElree.

CRUMRINE, P. J., Feb. 15, 1929.—The will of William H. McElree disposes of his residuary estate in the following words: "All the rest and residue of my estate, of whatsoever kind and wheresoever situate, I give, devise and bequeath to the children of my deceased brother, Robert McElree, and Nellie McElree, daughter of my brother, George McElree, share and share alike."

Nellie McElree contends that under this clause she takes one-half of the residue, and that the children of Robert McElree, deceased, divide the other half among them. The Robert McElree children contend that Nellie takes only the same share that each of them takes.

From early times, language similar to this has been the source of much contention in our courts, and the opinions on the question of a *per capita* or a *per stirpes* distribution are almost innumerable. Concerning this multiplicity of decisions, the annotator in 16 Am. Law Reps. 16, says: "It is a common remark that the decisions on the question as to when beneficiaries under a will are to take *per capita* and when *per stirpes* are in hopeless confusion. Analysis and comparison, however, show that their diversity of result is due not to a difference as to the principles of construction, but as to the amount of evidence of a contrary intent which will overcome the general presumption that where the proportions in which the beneficiaries are to take are not specified, they take *per capita*."

This statement, I believe, applies to the law of Pennsylvania, where the confusion is more apparent than real, and results from the slight differences in the facts of the particular cases.

Nothing is to be gained from a discussion of our long line of decisions extending from Pemberton *v.* Parke, 5 Binn. 601, and McNeilledge *v.* Galbraith, 8 S. & R. 43, down to Donohoe's Estate, 5 D. & C. 165, and 282 Pa. 254.

The English rule given in 2 Jarman on Wills, *1051, is as follows:

"Where a gift is to the children of several persons, whether it be to the children of A and B, or to the children of A and the children of B, they take *per capita*, not *per stirpes*.

"The same rule applies where a devise or bequest is made to a person and the children of another person, or to a person described as standing in a certain relation to the testator and the children of another person standing in the same relation, as to 'my son A and the children of my son B;' in which case A takes only a share equal to that of one of the children of B, though it may be conjectured that the testator had a distribution according to the statute in his view. So if the gift be to A and B and their children, or to a class and their children, every individual coming within the terms of the description, as well children as parents, will take an equal proportion of the fund; that is, the distribution will be made *per capita*.

"But this mode of construction will yield to a very faint glimpse of a different intention in the context."

This rule was adopted by our Supreme Court as correct, but the last clause, holding that a "faint glimpse" of a different intention was sufficient to set it aside, was so much emphasized as practically to nullify its effect as a rule of presumption: Osburn's Appeal, 104 Pa. 637; Scott's Estate, 163 Pa. 165.

In Scott's Estate, *supra*, Mr. Justice Fell said: "This rule under the English authorities yields to slight indications of a contrary intent, and in Pennsylvania the contrary intent is inferred where, under the intestate laws, which are always resorted to in cases of doubtful interpretation, the distribution would be made *per stirpes*, as in the case of a gift to a son or brother of the testator and to the children or heirs of a deceased son or brother."

So, in this State, practically our only rule of construction applying to this class of cases is that where there is a doubt as to whether a distribution *per capita* or *per stirpes* was intended, that construction which adheres to the statute of distribution should be applied: Sipe's Estate, 30 Pa. Superior Ct. 145; Ashburner's Estate, 159 Pa. 545.

And this is reasonable, for our intestate laws represent what long experience has taught us that the average man would likely do with his property under given circumstances.

Now, in the case before us, the testator had one brother living, George McElree, the father of Nellie. Another brother, Robert McElree, had died before the will was written, leaving children. Had there been no will, George McElree would, of course, have taken one-half and the children of Robert divided the other among them. Now, if the rule given above were absolute and not merely a means of ascertaining the testator's intention, one-half the residue would go to Nellie McElree. But this conclusion overlooks a very important fact, to wit, that the testator himself disregarded the living brother and picks all his beneficiaries from the class of nephews and nieces, which would indicate that he was not concerning himself with lines of descent, but with the individuals he wished to benefit. He was not thinking in terms of brothers and sisters, but of nephews and nieces.

This principle is well recognized in our law, "that when a testator designates the objects of his bequest or devise by their relationship to a living ancestor, such legatees or devisees take equal shares *per capita*. In great strictness of speech, the living of the ancestor, who is referred to only to

designate the objects of the testator's bounty, excludes the *per stirpes* rule, which belongs properly to the statutes of distribution and is a substitutionary rule by which the children or next of kin of a deceased person who would have been an heir are placed in his stead:" Risk's Appeal, 52 Pa. 269.

And, in Scott's Estate, *supra*, it was said:

"The benefit here was evidently intended for the legatees individually as nephews and nieces, and not as representing their parents, who, in two instances, are still living and were entirely passed over. The nephews and nieces are treated as if their parents were dead; and, in that case, if there were no will, the estate would go *per capita* under the intestate laws to the beneficiaries and others occupying the same position.

"The intestate laws, which would have required a distribution *per stirpes*, are passed over in order to exclude brothers and sisters and give the estate directly to nephews and nieces. That having been done, distribution under the law would then be *per capita*, and the presumption is in favor of such an intention on the part of the testator, in the absence of evidence in the will of a purpose to further supersede the statute. The will seems clearly and affirmatively to show that the distribution was to be in equal shares."

So here, the testator voluntarily passing over the brother, and the beneficiaries being placed all in the same class, the Intestate Act of June 7, 1917, § 9 *(b)*, P. L. 429, would distribute to them *per capita*. So, if the reason of the statute of distribution rule be invoked, it must work in favor of a *per capita* distribution.

Counsel for Nellie McElree relies chiefly on the case of Herman's Estate, 90 Pa. Superior Ct. 512, as being decided on substantially the same facts as the case at bar. But while the language of the will is almost identical, the facts of that case are entirely different. The provision there is: "I give and bequeath unto Franklin H. Wogan, and the nephews and nieces of my late husband, Charles A. Herman, that survive me, share and share alike." Franklin H. Wogan was the nephew and sole heir of the testatrix, while her husband's nephews and nieces were not related to her at all. In previous items of the will she had given to Wogan substantial devises and bequests. Judge Keller says, *inter alia:* "These beneficiaries stood in different degrees to the testatrix. The first mentioned as residuary legatee is her sole heir. The other nine are in an entirely different class. When this is so, the intention for distribution *per stirpes* is to be inferred. . . . The nine nephews and nieces of her husband were not her kin; hence, they did not bear the same relation to the testatrix as Wogan, which distinguishes this case from Scott's Estate, 163 Pa. 165; Joyce's Estate, 273 Pa. 404, and Brundage's Estate, 36 Pa. Superior Ct. 211."

Of the last cases, one more in point with the case at bar is Donohoe's Estate, 282 Pa. 254. The language used there was: "In case of death I leave everything to each of brother Dan's children and Phil, share and share." "Phil" was a living brother of the testator. It was held that the brother took only the same proportion that each of Dan's children's took, the distribution intended being *per capita*.

Counsel for Nellie McElree also contends that, since the children of Robert McElree are not named, the legacy to them is a gift to a class, which negatives a *per capita* distribution. If the legacy here were to a class in the technical sense, the argument might have some force, but the fact that legatees are described by their relationship to some one else without giving their individual names, does not of necessity mean that they take as a class and not as individuals: Wenzel's Estate, 12 Dist. R. 63; Billings's Estate (No. 1), 268 Pa.

680

67. By the same token, a naming of the legatees does not necessarily negative the idea that they are to take as a class: Billings's Estate (No. 1), *supra;* Sharpless's Estate, 214 Pa. 335. In any case, the ascertained intention of the testator must govern.

Here the presumption is against the children of Robert McElree being regarded as a class. Robert was dead at the time the will was made and his children were individuals in being. There was no possibility of any more persons answering that description. Their interests became vested on the death of the testator. And had any died before the testator, his share would have gone to his heirs, or, in default of issue, to co-residuary legatees.

After this brief consideration of the law, we turn again to the words of the will in question: "All the . . . residue of my estate . . . I give, devise, and bequeath to the children of my deceased brother, Robert McElree, and Nellie McElree, daughter of my brother, George McElree, share and share alike."

It is significant that the children of Robert McElree are first named and Nellie McElree linked with them by the conjunction "and." (This fact was stressed in Donohoe's Estate, *supra.*) Then are used the words "share and share alike." Omitting the reference to Nellie's parentage, and we have "to the children of my deceased brother, Robert McElree, and Nellie McElree, share and share alike," it would certainly be doing great violence to plain words to say that Nellie was to have one-half of the entire estate.

I am of the opinion that the children of Robert McElree (the King children taking the share of their deceased mother) and Nellie McElree were intended to share equally in the residue, each taking a one-seventh—and a decree of distribution in accordance with such findings is filed herewith.