## McDowell Estate (No. 2)

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Paul H. Ferguson, Zink, Shinehouse & Holmes* and *George W. Hoft,* for exceptants.

*Duane, Morris & Heckscher,* contra.

Bolger, J., March 18, 1963.—Exceptions have been filed to the adjudication confirming the final account of the trustees at the termination of the trust. The adjudication awarded three-fourths of principal to Charles McDowell Morris, and one-fourth in equal shares to Francis Warren McDowell, 3rd, and Mary Catherine McDowell Lund. All of the distributees have filed exceptions.

Testator died in 1907 survived by his widow and five children. The widow died May 27, 1922, and all of the five children are now deceased.

By his will and codicil, he directed that his residuary estate be held in trust, one-third of the income to be paid to his wife for life and the remaining two-thirds to be divided equally among his five children. Upon the death of his wife, the share of income she had received is to be added to the shares distributable to his children.

Testator in paragraph fourth directed the payment of the income equally among his children during the term of their natural lives ". . . and if any of my said

children shall die before or after the decease of my said wife leaving a child or children surviving, such child or children to receive, share and share alike, the share of income and interest that the parent would have taken if living, until such child or children shall respectively arrive at the age of twenty-one years, and then to pay the principal producing the income to which said child or children are respectively entitled, to such child or children; but if any of my children should die leaving no child or children to survive him or her, then to pay the income to which such child or children would have been entitled equally to my surviving children during their respective lives, and at their death share and share alike to their child or children until such child or children shall respectively arrive at the age of twenty-one years, and then to pay the principal producing the income to which such child or children are respectively entitled to such child or children."

Paragraph fifth of the will repeats the same general language with reference to the remaining two-thirds of income. The codicil directed that if any of testator's children died childless, one-third of the income he or she had received was to be paid to the survivor spouse, if any, for life. In the codicil he also gave $1,000 in trust for the benefit of his then only living grandchild and made a similar provision for each after-born grandchild.

Of the five children who survived testator and his wife, a daughter, Anna, died in 1927 without children; a son, Charles, died in 1942 without children. F. Warren McDowell, another son, died in 1945 survived by two children, Francis Warren, 3rd, and Mary Catherine. By adjudication dated June 4, 1945, the opinion writer, as auditing judge, awarded one-third of the estate outright to the two children and two-thirds back to the surviving trustee. In doing so, we accepted the request of counsel. There was no objection to it and no

exceptions were taken. We are now convinced that this was error in part.

The next child to die was Joseph, who was survived by his widow and no issue. Following his death and by adjudication dated April 1, 1949, the entire principal then remaining was awarded further in trust for the benefit of the last surviving child and Joseph's widow. Exceptions were taken to this adjudication and dismissed by the court en banc in an opinion reported in 68 D. & C. 191. Joseph's widow died in 1959 and on October 5, 1961, Rebekah McDowell Morris, the last surviving child of the testator, died survived by one son, Charles. It is thus apparent that there are three living grandchildren of testator, two of them the chilren of F. Warren, and one of them the child of Rebekah. Warren's two children claim that they are entitled to the balance of principal as per capita remaindermen with Rebekah's son, Charles, while the latter claims that he is entitled to the entire balance of principal.

The learned auditing judge in a carefully considered adjudication determined that testator's general intention was to direct a stirpital distribution of all of the principal to and among his grandchildren. He very properly found that testator did not intend that the accumulated shares of such children as died without issue should be paid to the child of the last surviving life tenant, citing Vandergrift Estate, 406 Pa. 14; Galli's Estate, 340 Pa. 561, and Fox's Estate, 222 Pa. 108. The auditing judge correctly found that the words "survivor" or "surviving" in this will must be understood to mean "other" where in any other sense it would lead to an intestacy or an inequality of those standing in the same degree of relationship to testator or to a distribution not in accordance with the general scheme of the will in its entirety. As stated in the adjudication, had the parents of the living grandchildren been the first to die, it would be a strained and

erroneous construction to conclude that there would have been an intestacy upon the death of the survivor of the other three children who were childless.

We do not concur, however, in the interpretation of the auditing judge that distribution of principal was to be stirpital insofar as it relates to the principal which supported the income paid to the children who died without children. In the first place, it is obvious that testator never intended his children to receive principal. If a literal construction advanced by Charles McDowell Morris were given to testator's words, the grandchildren, in order to take principal, would have been obliged to be minors at the time of their parents' death since the substitutionary gift was primarily income during minority and then principal as each attained age 21. Such a construction is absurd: Thomas Wolstenholme Estate, 26 D. & C. 2d 610, 409 Pa. 380.

The will clearly stated that upon the death of a child leaving children, that share of principal supporting the income the deceased child had enjoyed was to go immediately to his child or children as income if under 21, and as principle if over 21—a stirpital distribution, and the auditing judge so found.

It would appear at first reading that testator intended a stirpital distribution of all of the remainder. Indeed such an interpretation was presented to the court in 1945, and although all parties in interest had notice, there was no objection and an award was made of one-third of corpus instead of one-fifth. This interpretation must have influenced the learned auditing judge. After carefully scrutinizing the will, the design of testator becomes apparent and a different disposition of the shares of children dying childless is indicated. We believe that testator intended the income of such share to be added cumulatively until the death of his last child. The will in paragraph fifth states as follows: "But if any of my children should die leaving no child

or children to survive him or her, then to pay the income to which such child or children would have been entitled equally to my surviving children during their respective lives *and at their death share and share alike to their child or children* . . . (income during minority) and then to pay the principal producing the income to which such child or children are respectively entitled to such child or children." (Italics supplied.)

When the testator stated "and at their death", and later to "their child or children", it appears that he intended this part of corpus to be distributed per capita to and among his grandchildren. In our opinion, the use of the words "their death" meant the death of the survivor of his children, whether childless or not, and when he used the words "their child or children", he was referring to all of the children of his then deceased children or his grandchildren as a class.

It is well recognized that no will has a twin brother: Newlin Estate, 367 Pa. 527. In Wanamaker Estate, 399 Pa. 274, by way of dictum, the Supreme Court said (p. 283) : "However, we agree with the auditing Judge that this will is sui generis, and that no prior decision of the Court governs it. It is therefore unnecessary to analyze or review the authorities cited by appellant or appellee. Considering the entire will in the light of the circumstances surrounding testator when he made it, it will suffice to say that we believe Mr. Wanamaker intended the principal of his Insurance Trust to be paid to his grandchildren (living at the time fixed for distribution) *per stirpes* and not per capita."

We are, however, well satisfied that the principle of law enunciated in Rosengarten's Estate, 47 D. & C. 235, applies to this case. On pages 237 and 238, the late Judge Hunter stated:

"There is nothing unusual or unnatural in a distribution per capita among grandchildren. In fact, it may be a common-sense distribution in the family situation

which we have here, having regard to the common claims and necessities of living individuals who are equally related to testator.

"Similar distributions were sustained in Duckett's Estate, 214 Pa. 362, Joyce's Estate, 273 Pa. 404, Roney's Estate, 19 Dist. R. 565, Lennig's Estate, 12 D. & C. 51, and Jayne's Estate, 16 D. & C. 51. See also Bayard's Estate, 340 Pa. 488, Lenhart's Estate, 344 Pa. 358, and A. L. I. Restatement of Property, §300.

"There is also the analogy of the Intestate Act of June 7, 1917, P. L. 429, secs. 7 (c) and 19, 20 P. S. §§53, 132, which provide that where grandchildren or heirs are related in the same degree they shall take in equal shares: Scott's Estate, 163 Pa. 165, 169; Lenhart's Estate, supra, at p. 362. As was said by Rice P. J., in Sipe's Estate, 30 Pa. Superior Ct. 145, 150:

" 'The statute of distributions governs in all cases where there is no will; and where there is one, and the testator's intention is in doubt, the statute is a safe guide: Ashburner's Estate, 159 Pa. 545'."

The foregoing language was approved by the Supreme Court in the same estate reported at 349 Pa. 32, wherein at page 36 Mr. Justice Allen Stearne said: "We agree with the interpretation of the orphans' court for the reasons and authorities cited by Judge Hunter in his learned and comprehensive opinion."

Wanamaker Estate, supra, cited by the auditing judge is not in point and is certainly not controlling. In that case, the Supreme Court, although it had one will before it for construction, gave consideration to two other trusts which had been created by the testator and in both of which the language differed substantially from the language in the will which was the subject of the controversy. It is to be noted that Justice Bok filed a dissenting opinion in which he cited Campbell Estate, 395 Pa. 395, and Davis' Estate, 319 Pa. 215.

As noted above in this opinion, we believe that it was error to award more than one-fifth of the principal upon the death of F. Warren McDowell to his two children. Because distribution has been made, it is not possible to grant relief in the nature of a review, but because there still remains two-thirds of the original corpus, it is now possible to decree the distribution thereof in a manner which will equitably adjust the error: Hunter's Pa. O. C Commonplace Book (2d ed.) Vol. 5, p. 218. "Where on a partial distribution, one of the distributees of an estate does not appear, and the entire fund is awarded to those who do appear and make claim, the inequality will be corrected on a subsequent distribution of other funds, by awarding to the one who received nothing on the first distribution enough to make up his proportionate share of both funds. If the second fund is insufficient to make him equal with the distributees of the first fund, the whole of the second fund will be awarded to him": Albertson's Estate, 329 Pa. 372.

We now find that Francis Warren McDowell and Mary Catherine McDowell Lund were entitled at the death of their father to receive one-fifth of the principal and that Charles McDowell Morris is now entitled to receive one-fifth of the principal as it existed before the distribution of the one-third was decreed. We also find that Francis Warren McDowell, Mary Catherine Lund and Charles McDowell Morris are each entitled to receive one-third of the three-fifths of the original corpus represented by the three children of testator who died childless.

The exceptions of Charles McDowell Morris are dismissed. The exceptions of Francis Warren McDowell and Mary Catherine McDowell Lund are sustained in part and in accordance with this opinion.

Counsel for the accountant will file with the auditing

judge for his approval a schedule of distribution in conformity with this opinion.

SHOYER, J. (concurring in part; dissenting in part), March 18, 1963.—My brethren and I are in accord that Mr. McDowell's general testamentary scheme provided for five equal stirpital distributions of the residuary corpus among the children of testator's five children. By a wealth of authority, the words "leaving a child or children surviving" in the primary clause would be extended to include descendants if necessary. See Restatement, Property, §285(1) (a), (2) (b) and (d) and comment thereto, pp. 1496-7, 1506-7, 1508-10.

I cannot agree with the decision of the majority to award on a per capita basis the three-fifths of the corpus which supported the income of the three children who died childless. Reliance is placed by the majority on those cases in which the will clearly withheld distribution of *all* corpus until death of the last life-tenant, such as Rosengarten's Estate, 47 D. & C. 235, where principal was then given expressly to "grandchildren". By pure coincidence the three grandchildren here claiming are the only grandchildren that Mr. McDowell ever had, so that the very same heirs are receiving distribution of corpus from the same identical trust, partly on a stirpital and partly on a per capita basis.

Assuredly, a testator may validly provide for such an unusual distribution if only he has expressed his wishes with sufficient clarity. No acceptable or arguable precedent has been discovered by the majority, however, and certainly this present will is too ambiguous to warrant such variance in distribution.

Although distribution of the childless three-fifths is postponed until death of the last surviving child, the distributees are not described as "grandchildren", words of true class description, as in Rosengarten Estate, supra, at page 236, where the significant dis-

tinction from a group "referred to as the children of their parents" is pointed out by Judge Hunter. Instead, distribution is directed to the "child or children" of my "surviving children", i.e., the members of the "class" are of two or more families and the parent of each received a prior life interest in an equal share in the subject matter of the "class" gift. ". . . [T]his fact tends to establish that those class members who are the children of one life tenant are to take only that share in which the parent life tenant had his interest . . .": Restatement, Property, §301, comment j, p. 1650. See also section 300, ibid., comment b, "Single Group designation", p. 1636. Note further that this testator has clearly demonstrated that he knew how to give per capita gifts to his "grandchildren" as evidenced by his explicit codicillary bequests of $1,000 to each.

It is a mistake for the majority to stress the vague and obscure clause "and at *their* death share and share alike to *their* child or children" to the extent of upsetting testator's general testamentary scheme: Lefebvre v. D'Arcy, 236 Pa. 235, 238; Drexel Estate, 19 D. & C. 2d 735, 744. The first "their" is double-barreled, pointing directly (via shorthand) at the deaths of all testators' children surviving those who might die without issue, and simultaneously at the individual death of testator's last child. Similarly, the second "their", while relating to *all* of testator's children, cryptically refers by the one plural possessive pronoun to *his, her or their* offspring, for obviously a single surviving grandchild could not be the offspring of more than one of testator's children, and, as stated in my adjudication, the words "share and share alike" are as applicable to groups as individuals, so they do nothing to dispel the ambiguity.

For the reasons set forth above, in addition to those stated in my adjudication, I would dismiss all the exceptions.