# Estate of Joseph Kelly, deceased. Appeal of the Fidelity Insurance, Trust and Safe Deposit Company.

193   45
s193  59

*Wills—Vested and contingent estates—Survivorship—Remainders.*

The testator gave his estate to his executor in trust for the benefit of his brother and sister, and particularized the trust as follows: " To collect and receive the income of my estate, and upon the receipt thereof to pay over the same into the hands of my brother and my sister or their duly authorized agent or attorney. I hereby declare it is my will that my brother and sister shall receive the income of my said estate absolutely, and the survivor of them, with power to them or the survivor of them, to devise by any will or testament they or either of them may choose to make." The brother and sister survived the testator. The brother then died leaving a will by which he disposed of his interest in the estate. *Held,* (1) that the trustee was entitled to retain the whole of the fund after the death of the brother, paying to the sister for life the entire income; (2) that the sister had an appointment by will as to one half, and the other half upon her death would go as appointed by the will of the brother; (3) that half the small balance of income at the death of the brother should be paid to his executor.

Argued March 27, 1899. Appeal, No. 72, Jan. T., 1899, by the Fidelity Insurance, Trust and Safe Deposit Company,

trustee, from decree of O. C. Phila. Co., Jan. T., 1898, No. 415, sustaining exceptions to adjudication. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to adjudication. HANNA, P. J., filed the following adjudication :

Upon proceeding to consider the question of the distribution of the fund comprised in the account, it appeared that testator died April 16, 1882, leaving a will, duly proved, by which, inter alia, he devised and bequeathed to the Fidelity Insurance, Trust and Safe Deposit Company, in trust, for the benefit of his brother, Edward P. Kelly, and his sister, Mary A. Kelly, all his estate whatever, to collect the income therefrom and pay over the same into the hands of his said brother and sister, or their duly authorized agent or attorney, also declaring as follows, viz : " I hereby declare it is my will that my brother . . . . and my sister . . . . shall receive the income of my said estate absolutely, and the survivor of them, with power to them or the survivor of them, to devise by any last will and testament they or either of them may choose to make."

It further appeared testator appointed the said trust company as executor, and upon the settlement of its account in 1884 the balance therein stated was awarded by the court to be retained by the executor, as trustee, for the purposes declared in the will.

Testator's brother and sister survived him, and the trustee continued to pay and divide the income from the trust estate in equal shares between them, until the death of testator's brother, Edward P. Kelly, which occurred July 22, 1898. It then appeared he had executed a last will dated December 18, 1897, and duly admitted to probate August 3, 1898, by which, inter alia, he devised and bequeathed all the residue of his estate to his nephew, Reuben C. Kelly, absolutely, and further declared as follows : " And I do declare that this will is to operate and be effectual upon all estate that may belong to me, and particularly upon any estate coming to me or over which I may have the power of testamentary disposition under the will of my brother, Joseph Kelly."

He also appointed said Fidelity Insurance, Trust, etc., Company as executor of his will. Testator's sister, said Mary A. Kelly, survived him, and is still living.

By the death of said Edward P. Kelly, the question at once arises, What disposition is to be made of the fund held by accountant as trustee for him and his sister? On the part of accountant it is claimed that the corpus of the trust fund should be awarded to it, to be retained still as trustee for said Mary A. Kelly for life. But on her behalf it was claimed that as survivor of her brother, she is entitled to the entire fund absolutely, notwithstanding the exercise of the power of appointment by him above mentioned. And in the next place, it was contended, on behalf of the executor of said Edward P. Kelly, deceased, that as to him the trust is ended; that he was entitled to dispose of one half of the fund held in trust under the power of appointment given to him by the testator, and as he had it liable for his debts and legacies, it should be awarded to his executor for administration according to law.

So far as was shown, no question was raised at the adjudication of the account of the trust company as executor, and the fund was awarded to it, to be held as trustee for the brother and sister. This was acquiesced in by them, and they were paid the income in equal shares. The death of the brother, however, suggests the present contention.

The will of testator was evidently prepared in Paris, France, and, if not by himself, perhaps by one of the subscribing witnesses, whose name suggests a member of the bar of this city, yet long a nonresident, and many years removed from active practice. It is therefore not strange it displays unfamiliarity with well-settled principles of law and forms of procedure in the preparation of wills. In the first place, testator omitted to state during what term the trust was to continue. He created a valid active trust, but does not say whether the income is to be paid in equal shares to his brother and sister or to them during life, or clearly and beyond all doubt that the survivor should receive the entire income during his or her life. This is left somewhat to conjecture. Testator then declares that his brother and sister shall receive the income absolutely, and, without a gift in remainder after their death of the trust fund, he attempts to confer upon them a power of appointment by will generally, but fails to say whether they each shall have power to devise either one half of the fund held in trust or the

entire fund in case of the death of one of his legatees leaving the other surviving. Thus his meaning is obscure, and from the language used by him, viz: "I hereby declare it is my will that my brother, Edward P. Kelly, and my sister, Mary A. Kelly, shall receive the income of my said estate absolutely, and the survivor of them with power to them, or the survivor of them to devise by any last will and testament they or either of them may choose to make," it is not free from doubt what he actually intended.

What, then, was the intention of the testator? It is very clear he intended the income to be divided equally between his brother and sister as long as they continued to live. But the inquiry next is, What was his intention in the event of the death of either his brother or sister leaving the other surviving?

This question seems to be answered by the will, viz: that the survivor shall take the whole income, for the reason that testator says his brother and sister, "and the survivor of them," shall receive the income of "my said estate absolutely." That is, the whole estate and not a part of it. But what is to become of the whole estate upon the death of the survivor? From a careful consideration of the will and effort to ascertain the intention of the testator, it would seem to be, as he intended the income to be equally divided between his brother and sister, but no division of the principal to be made until the death of the survivor of them, that when this took place the fund held in trust during the life of the survivor should then be divided as directed by his brother and sister by their will, which he authorized them to make and execute. Testator used this expression: "With power to them or the survivor of them to devise." He thus, it may reasonably be inferred, intended that each should have power to devise the fund held in trust for them, viz: one half. And while the will of one would not take effect as to the trust fund until the death of the other, yet when this occurred, both wills should become operative. The auditing judge has therefore reached the conclusion that, in order to fully carry out the intention of testator, the fund should be retained by accountant as trustee for Mary A. Kelly during her life, and is so awarded.

Balance, consisting of cash and investments,
    per account    .    .    .    .    .    .    $59,861 70
From which deduct:
    Clerk of orphans' court costs      .  $ 15 00
    Copies of adjudication, typewriting,
        certification, etc.    .    .    .      15 00
    Counsel fee to H. H. Pigott, Esq.   .  250 00      280 00
                                                    ——————
        Balance    .    .    .    .    .    .    $59,581 70

—consisting of investments set forth in the account, is awarded
to accountant as trustee for Mary A. Kelly for life, and to be
hereinafter accounted for.

Balance of income per account      .    .    .    $219 34

Any balance of income apportioned to the date of death of
Edward P. Kelly is awarded to the executor of his will, and
the balance due said Mary A. Kelly is awarded to her individually.

For reasons stated in Blight's Estate and Portuondo's Estate, 191 Pa. 28, no deduction is made of the direct inheritance
tax.

And now, November 4, 1898, it is ordered and decreed that
the balance in the hands of accountant be distributed and paid
as above awarded, and the annexed account be confirmed nisi
upon payment of the clerk's costs.

Upon exceptions to adjudication the following opinions were
filed:

ASHMAN, J., December 3, 1898:

The testator gave his estate to the executor in trust for the
benefit of his brother and sister, and particularized the trust as
follows: "To collect and receive the income of my estate, and
upon the receipt thereof to pay over the same into the hands
of my brother and my sister or their duly authorized agent or
attorney. I hereby declare it is my will that my brother and
my sister shall receive the income of my said estate absolutely,
and the survivor of them, with power to them, or the survivor
of them to devise by any will or testament they or either of
them may choose to make." The brother and sister survived
the testator. The brother has since died, leaving a will by
which he disposed of his interest in this estate.

Two rules of construction suggest themselves in any consideration which may be given to the will of the testator.   One is that a gift of income indefinitely, with no disposition over of principal, is an absolute gift of the entire estate.   This, of course, is subject to the qualification that nothing in the context of the will shall disclose a contrary purpose.   The gift here is of that character; that it is for life can be inferred only from the use of the word "survivor" and from the accompanying trust. The other rule is, that when a death is spoken of or implied, without any words of limitation as to time, it shall be taken to be a death before the testator, so that the survivor in this case would be the legatee who should be living at that time.   Both rules favor the vesting of estates, and if both shall be held to have operated here the estate would vest in equal shares at the death of the testator in the sister and brother if they should outlive the testator, or in one of them absolutely if only one should survive him.   The power of appointment would follow the gifts, and would be exercisable equally by both legatees if both should be living at the death, or by the survivor alone if only one should survive.   The rules are admirable in their simplicity; they favor the vesting of estates; and the rule as to survivorship prevents the disinheriting of issue who may be born between the death of the testator and the death of the first taker.   The question now is whether their adoption will thwart the apparent general scheme of the will.   It is admitted that the effect of any rule of construction of wills is often to sacrifice a particular intent in order to subserve the larger and controlling purpose of a testator.   His general intent may be to give the whole estate to certain devisees, but the gift may be clogged with limitations which are inconsistent with an absolute interest; to effectuate the ultimate purpose where that purpose is clear, the court will vest a fee in the first taker and will strike down a trust which, by reason of that vesting, has become useless.   The argument in support of the application to this will of the rule relating to survivorship is unquestionably strong.   It is true, as MITCHELL, J., observed in Woelpper's Appeal, 126 Pa. 562, that no rule of construction is settled in the sense that it must be unbendingly applied to all cases.   But there are cases in which, to cast all rules aside, will be to fish for the testator's intent without a line.   The embarrassments which may ensue

are shown by the conflicting claims which were put forward by the several parties in this case. The sister set up her right to the entire estate, on the ground that the survivorship referred to the death of the first taker, and that the gift was then of the whole income for life with power of appointment to the survivor, and that the trust being a dry one, was executed. She submitted as an alternative proposition that the power "to them or the survivor of them to devise" must be exercised by a joint will, and in default thereof, then only by the survivor. The trustee contended that each legatee had a power of appointment, and that the will of the deceased donee must be postponed in its operation until the death of the surviving donee.

All of these theories refer the survivorship to the death of the first taker. The first gives the survivor the whole income for life, and the sole right to appoint the whole principal, and it ignores the authority to each to appoint contained in the phrase "by any will or testament they or either of them may choose to make." The second involves the execution of a joint will with presumably a joint power of revocation, but with no power of revocation on the part of the survivor. The third deprives the legatee who fails to appoint of any share in the principal of the estate, and is open to the inference that if the survivor makes no will, the will of the first taker will carry the whole estate. In opposition to these demands, the representatives of the deceased brother claim that "survivor" related to the date of the testator's death; that if but one survived that event, such survivor would take the entirety; and that if both survived, each would share equally in the income, and each would be vested as to his portion with the power of testamentary appointment. This proposition has more than the merit of plainness; it works equality between the legatees and it protects the issue of the brother from disinheritance in favor of the sister who survives. It assumes that the testator had in mind a survivorship at the period of his death. It is safe to say of the rule which favors that period, that it is a settled principle of construction. Cripps v. Wolcott, 4 Mad. 11, disturbed it in England, but it has been steadily adhered to in Pennsylvania. It was declared to be binding in Johnson v. Morton, 10 Pa. 245, decided in 1849, and the new and opposing doctrine was said by STRONG, J., in Ross v. Drake, 37 Pa. 373,

in 1860, to have been repudiated. Woelpper's Appeal, 126 Pa. 562, is so far from superseding the rule that MITCHELL, J., expressly concedes that "the phrase, surviving brothers and sister, means survivors at the death of the testator, and shall be so construed, unless it clearly appears that the testator meant it to refer to a different period." In that case the contrary intent was so manifest that the master to whom the question had been referred, declared that it was impossible to read the will without concluding that the testator meant the period of survivorship to be the death, not of himself, but of the first takers. Notwithstanding this admission, he yielded to what he deemed the inflexibility of the rule, and was reversed by the court and by the Supreme Court. The inquiry whether the testator could have meant by survivor one who should die before him, which was made in the present case, was also propounded to this Court in Bell's Estate, 5 Pa. Dist. Rep. 421, where the rule in question was adopted, not because it was unyielding, but because it answered to the general tenor and scope of the will. The difficulty which confronts us, however, lies in the power of appointment, which was a useless adjunct to the gift of an absolute estate, and in the trust, which was equally useless, unless it was meant to uphold the interests of the appointees. If a place for these appliances can be found in the plan of the testator, they must be retained. The peculiar phraseology employed by the testator has no counterpart that we can find in any published testament.

Words which have come to be regarded as technical are used apparently without any knowledge of their technical force, and the meaning which might be ascribed to "and the survivor," in the first clause, is clouded by "or the survivor," in the next clause. But beneath its obscurities of expression, the auditing judge, we think, has reached the actual meaning of the testator. Under the belief that his brother and sister would outlive him, the testator gave, or intended to give, to each an equal share in the income of his estate, and on the death of either, the whole income to the survivor for life; and he coupled with these gifts a power of appointment of the principal by each, of his or her share, with a possible power of appointment of the whole estate by the survivor in case the first taker should fail to appoint; and he created a trust to protect the future inter-

ests. If this view is correct, the fund was properly awarded to the trustee.

PENROSE, J., concurring, December 3, 1898:

In the interpretation of writings, as has often been said, " the court is bound to give effect to every word without change or rejection, if any effect can be given not inconsistent with the general effect of the whole instrument:" Constantine v. Constantine, 6 Vesey, 102; and " all mere technical rules of construction must give way to the plainly expressed intention of the testator, if that intention is lawful:" Reck's Appeal, 28 Smith, 435.

The will in the case now before us gives the testator's estate to the accountant, in trust for his brother and sister, directing the trustee to collect and receive the income and pay it to the beneficiaries " or their duly authorized agent or attorney," with no limitation as to continuance and no gift over. Standing by itself, this, of course, would entitle the brother and sister, who were under no disability, to the absolute ownership; but there is added, " I hereby declare it is my will that my brother . . . . and sister . . . . shall receive the income of my said estate, and the survivor of them." The plain meaning of this is that, while the estate is given exclusively to the brother and sister, they are to have it sub modo, that is, at the death of either, all the income to be paid to the survivor; and to accomplish this, the creation of a trust, which otherwise would be invalid, had a recognized legal purpose. The brother having died, the trust must be continued as to the half of the principal ultimately belonging to his estate and passing under his will, in order that the income may be paid to the sister, who still survives, the principal being thus protected in the mean time; but as the sister's half of the principal is now freed from any right on the part of the brother, and she alone is interested in that part of the estate, the trust, so far as it is concerned, operates simply as a purposeless restraint upon her ownership, which cannot be permitted: Gray on Perp. secs. 119, 120. There is nothing in what follows the provision for payment of income to the brother and sister " and the survivor " to change the result, viz : the words, " with power to them or the survivors of them to devise by any will and testament they or either of them may choose to make." Where a gift is expressly restrained to a life

estate, with power in the donee to appoint by will, the life estate is not enlarged by reason of the power; but if the limitation is without restriction as to duration, and there is added a power of disposition by will, the gift will be construed as conferring the absolute estate, for the absolute property being given, the power becomes nugatory, and is construed to be nothing more than an anxious expression of the donor that the donee may have an uncontrolled power of disposing of the property: Story's Equity, sec. 1393; Physick's Appeal, 50 Pa. 128; Yarnall's Appeal, 70 Pa. 335.

Nor is the absolute gift to the brother, subject to the trust to pay the income to the surviving sister, taken away by the words used in expressing the power of disposition, "to them or the survivor of them to devise by any will and testament they or either of them may choose to make." The power, it will be observed, is given in express terms "to them," "by any will . . . . they or either of them may choose to make;" but it is argued that as the power is given to them "or the survivor of them," the estate, with the power, passes at the death of either to the survivor, exclusively. This strikes out altogether the words "them," "any will," and "they or either of them," and gives effect only to the words "or the survivor," though the elementary rule requires that a meaning must, if possible, be given to every word in a will, without the rejection of any; and another principle, equally well settled, is that an absolute estate will never be cut down by subsequent words of doubtful import, unless the latter are thereby otherwise rendered absolutely meaningless. Here there was an obvious reason for adding the words "or the survivor," viz: to provide for the contingency (imported by the use of the word "or") of the death of one of the legatees in the lifetime of the testator, which, indeed, in Pennsylvania is the sense in which, primarily, the word "survivor" or "surviving," as here used, is understood in the interpretation of wills. Thus understood, all the provisions of this will are harmonized and effect given to every word, which is impossible under any other construction.

The auditing judge was clearly right in the view which he took of the meaning of the testator, and the adjudication, modified by awarding to the sister the half of the estate as to which the purpose of the trust has ceased, should therefore be confirmed.

The court entered the following decree :

And now, December 31, 1898, the decree of the auditing judge is modified by awarding to Mary A. Kelly, absolutely, $29,790.85, being one half of the principal of said trust estate ($59,581.70) now in the hands of the accountant, and, subject to said modification and decree of the auditing judge, is confirmed; and it is hereby ordered and decreed that the other one half of the principal of said trust estate, viz : $29,790.85, be retained by the accountant, in trust, to collect and pay over the income thereof to Mary A. Kelly during her life, and at her death to distribute the principal thereof under the will of Edward P. Kelly; and that the Fidelity Insurance, Trust and Safe Deposit Company shall, as executor of Edward P. Kelly, retain $109.67, being one half the balance of income ($219.34) in the hands of the accountant on July 22, 1898, the date of the death of Edward P. Kelly; and that the accountant shall pay over $109.67, the other half of said balance, to Mary A. Kelly individually; and that the income received by the said accountant since July 22, 1898, shall be paid over to Mary A. Kelly.

*Errors assigned* were. (1) in awarding to Mary A. Kelly, absolutely, $29,790.85, being one half of the principal of said trust estate ($59,581.70) now in the hands of the accountant; (2) in not awarding to the Fidelity Insurance, Trust and Safe Deposit Company, trustee under the will of the testator, the entire principal, to be held in trust during the life of Mary A. Kelly.

*H. Herbert Pigott*, for appellant.—The orphans' court erred in not awarding the whole of the fund to the trustee, because it was the plainly expressed intent of the testator that the trust should continue during the lives of both legatees : Barnett's App., 46 Pa. 392.

The orphans' court erred in awarding any portion of the fund to the sister absolutely, because the trust declared in the testator's will was an active one, and therefore could not become executed during the period declared for its duration : Krebs's Est., 184 Pa. 222; Andrews v. Boyd, 5 Me. 199 ; Hemphill's Est., 180 Pa. 95; Earp's App., 75 Pa. 119 ; Deibert's App., 78 Pa. 296 ; Varner's App., 87 Pa. 422; Watson's App., 125 Pa. 340 ; Harbster's Est., 133 Pa. 351; Stambaugh's Est., 135 Pa.

585; Keene's Est., 9 Phila. 339; Keene's Est., 81 Pa. 133; Livezey's App., 106 Pa. 201.

The orphans' court erred in not awarding the whole of the fund to the trustee, because the will gave the estate to be held for the joint benefit of the legatees, and thus necessarily postponed distribution until the death of the last survivor: Aubert's App., 119 Pa. 48; DuPlaine's Est., 185 Pa. 332; Erwin's Est., 5 Montg. Co. Law Rep. 18; Morison's Est., 5 Montg. Co. Law Rep. 155.

The orphans' court erred in not awarding the entire fund to the trustee because the legatees took under the will of the testator an equitable life estate in joint tenancy, which could not in any case merge in the legal remainder, which they took as tenants in common: McLaughlin v. McLaughlin, 30 Atl. Rep. 607; Clark v. Parsons, 39 Atl. Rep. 898; Little v. Wilcox, 119 Pa. 439; Hemphill's Est., 180 Pa. 95.

The orphans' court erred in awarding any portion of the fund to the sister absolutely, because, the trust being an active one, there could be no merger of the interest in remainder with the life interest: Lewis's Est., 3 Misc. Rep. (N. Y.) 164; Asche v. Asche, 113 N. Y. 232; Martin v. Pine, 79 Hun (N. Y.), 426; Lent v. Howard, 89 N. Y. 181; Greer v. Chester, 62 Hun (N. Y.), 329; Greer v. Chester, 131 N. Y. 629; Raymond v. Rochester Trust, etc., Co., 75 Hun (N. Y.), 239.

The orphans' court erred in awarding any portion of the fund to the sister absolutely, because the trust declared by the will was for her protection in the nature of a spendthrift trust, and the plain intent of the testator was defeated by such award: Vaux v. Parke, 7 W. & S. 19; Fisher v. Taylor, 2 Rawle, 33.

The intention of the testator was that the word "survivor" should relate to the death of the life tenant first dying, not to his own death. The estate of Edward P. Kelly is therefore not entitled to one half of the fund until after his sister's decease: Woelpper's App., 126 Pa. 562; Arnold v. Jack, 24 Pa. 57; Jack v. Arnold, 1 Grant, 405; Lentz v. Lentz, 2 Phila. 117; Kerr v. Verner, 66 Pa. 326; Jones v. Cable, 114 Pa. 586; Hart's Est., 7 Pa. C. C. R. 369; Erwin's Est., 5 Montg. Co. Law Rep. 18.

*Richard C. Dale*, for the executor of E. P. Kelly.

*Silas W. Pettit*, with him *Peirce Mecutcheon*, for appellee.

OPINION BY MR. JUSTICE DEAN, October 6, 1899:

Joseph Kelly died April 16, 1882, leaving a will made two years before, of which this provision became the subject of disputed interpretation:

" 1st. I do give, bequeath and devise to the Fidelity Insurance, Trust and Safe Deposit Company of the city of Philadelphia in trust for the benefit and behalf of my brother, Edward P. Kelly, and my sister Mary A. Kelly, all my estate, real, personal and mixed of every kind whatever. And I hereby direct the said Fidelity Insurance, Trust and Safe Deposit Company to collect and receive the income of my estate and upon the receipt thereof to pay over the same into the hands of my said brother Edward P. Kelly and my sister Mary A. Kelly or their duly authorized agent or attorney; I hereby declare it is my will that my brother Edward P. Kelly and my sister Mary A. Kelly shall receive the income of my said estate absolutely, and the survivor of them, with power to them or the survivor of them to devise by any last will and testament they or either of them may choose to make."

Both beneficiaries survived the testator; up to July 22, 1898, the trustee paid to the brother and sister, each, one half the income; the brother, Edward P. Kelly, then died, having first made his will, by which, among other bequests, he gave the residue of his estate to his nephew; this bequest would pass to the nephew whatever remaining interest he had under the will of his brother in that estate. At the date of Edward's death the trustee had in its hands as principal of the fund bequeathed to the brother and sister, after deducting all expenses, $59,581.70, and income accrued at the death of the brother, $219.34. The learned auditing judge, HANNA, was of opinion that the true intent of testator, as shown by his will, would be effected by the trustee retaining the whole fund and paying to the sister, Mary A. Kelly, for life, the entire income; that she had the appointment by will, as to one half, and the other half would then go as already appointed by the will of Edward, the brother; that half the small balance of income, at the death of Edward, should be paid his executor. The Fidelity Company, executor of the will of Edward, filed exceptions to the

adjudication of the auditing judge, alleging a misinterpretation by him of the will of Joseph Kelly, in not giving one half the fund to Edward's executor absolutely. Mary A. Kelly, the sister, also filed exceptions, claiming that under the will of Joseph she was entitled to the whole fund absolutely in the death of Edward; but if this were not the case, then she was entitled to one half the fund absolutely.

The court on hearing was of the opinion that by the death of Edward the purpose of the trust as to the other, the sister's half, had been fulfilled, and therefore, she was entitled to this half absolutely; as to the half, the principal of which had been disposed of by Edward's will, she was entitled during life to the income of that half, and as to it the trust continued until her death, the principal then passing by the will of Edward to his legatees; the decree of the auditing judge was modified accordingly. Three opinions come up to us from the court below, which certainly demonstrate that the case has been most carefully considered. We admit it is a doubtful one, but a majority of us concur in the interpretation put upon the will by the auditing judge. There is no technical rule of construction which defeats the intent of the testator, if that intent be manifested by his words. We think the auditing judge has shown in his opinion : (1) that the testator intended to create a legal estate in the trustee for the lives of the brother and sister and the survivor of them, and they thereby had an equitable joint life estate during their joint lives ; (2) that he intended a remainder to the appointee by will of each one's share of the principal of the joint estate, and that there is nothing in the will which ends the trust as to the income of the estate or any part of it, and necessarily, therefore, none as to the principal during the life of the survivor. As all the opinions concur in holding the trust as an active, valid one, it follows that it would be inconsistent with the purpose of it to hold that it ended as to any part of the principal during the life of the surviving beneficiary.

We can add nothing of moment to what has been so well said by the learned auditing judge. The decree of the court below, in so far as it modifies the decree suggested by him, is reversed, and the decree made by him is adopted by this court and affirmed, costs of this appeal to be paid out of the fund.