## Albertson's Estate.

Argued December 6, 1937. Before SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

*Isaac S. Grossman,* for appellant, in No. 352.

*Robert T. McCracken,* with him *Laurence H. Eldredge, Horace Michener Schell* and *Montgomery & McCracken,* for appellant, in No. 354.

*Percival H. Granger,* with him *Charles H. Ortt* and *Howard S. Spering,* for appellant, in No. 359.

*Francis R. Matlack,* for appellant, in No. 362.

*Arthur E. Weil,* with him *Albert L. Moise,* for appellees, in No. 352.

*Morris H. Goldman,* with him *Bernard Eskin, Nathan Silberstein* and *Wolf, Block, Schorr & Solis–Cohen,* for appellee, in Nos. 354, 359 and 362.

*John Russell, Jr.,* with him *Bevan A. Pennypacker* and *Morgan, Lewis & Bockius,* for appellee, in No. 354.

*D. Arthur Magaziner,* with him *Harry B. Schultz,* for appellee, in Nos. 352, 354, 359 and 362.

Per Curiam, March 21, 1938:

These appeals, four in number, come from adjudications of the final account of the administration of a trust created by the will of Lewis Albertson. He died

in 1901, leaving a will dated October 10, 1900. In the first paragraph he directed the payment of his funeral expenses; in the second, gave a legacy of $1,000 to a granddaughter, Mary Bair, whose mother, testator's daughter, died some 13 years before; in the third and last paragraph, he gave the residue to trustees to pay the income to his widow for life together with so much of the principal as they might think necessary, and, on her death, to pay the income in specified proportions to five children, designated by name, for their respective lives. The life interests were followed with a provision of which this is typical: "and after her death two tenths part of the principal of said residuary estate to be paid to such of her children as shall be then living share and share alike", except that, in the case of his daughter, Amelia, the provision was: "after her death One Tenth part of the principal of said residuary estate shall be paid over to her son Russell Hagy absolutely." The will then continued: "In case of the decease of any of my said children without leaving lawful issue then in such case, I give devise and bequeath the said part or share bequeathed to the children of such child so dying unto my said executors hereinafter named or the survivor of them in trust to hold the same for my surviving child or children in such shares and proportions in the same manner and for the same uses, intents and purposes and under the same trusts as are hereinbefore set forth and declared of and concerning the parts or shares of my residuary estate hereinbefore given and bequeathed for the use benefit and behoof of my said children respectively."

Decedent left a daughter, Amelia Hagy Roberts, survived by a son, Russell Hagy; a daughter, Emma, survived by children; a son, William, survived by a daughter and by grandchildren, issue of a deceased son; and a son, Charles, and a daughter, Ella, both dying without issue. The three children with issue died before the two who had none, and, in prior accounts, distribution

of principal was made to the children of testator's children so dying. But in the prior adjudication, following the death of William, who left a child, Margaret Beitel, and two grandchildren, Henrietta Wagner and Harry Albertson, children of William's deceased son, the orphans' court was not advised of the existence of William's deceased son's issue, who, in those circumstances, received nothing, Margaret Beitel receiving the entire principal then for distribution. At the audit of the final account a claim in behalf of Henrietta Wagner and Harry Albertson was made in the circumstances stated in the opinion filed below and presently to be referred to. The claim was allowed and the decree provided for the equalization of their stirpital share with that of their aunt, Margaret Beitel, who, on the prior adjudication, received the whole sum for distribution. She has appealed and challenges the correctness both of the interpretation of the will allowing her nephew and niece to share, and the decree equalizing the shares. In 1933 the daughter, Ella, who had no children, died; the trustees then paid the entire income of what remained of the corpus to the surviving child, Charles. He died in 1934. As the trust then ended this final account was filed.

The executor of testator's daughter, Amelia, appeals from the rejection of a claim to part of the principal, made in her right on the ground that "The clause of the will devising the share of principal 'in case of the decease of any of my said children without leaving lawful issue', constitutes in law a gift of principal directly to the testator's children surviving at the testator's death"; or, in the alternative, that there was an intestacy. The executor of the daughter, Ella, and the granddaughter, Mary Bair, legatee in the first clause of the $1,000, also appeal on the ground that there was an intestacy.

In the orphans' court a number of hearings were held. After the first adjudication of this account, parties interested desired to present additional facts with the re-

sult that, at the request of the auditing judge, the subject was referred back to him for readjudication: *Albertson's Estate (No. 1)*, 28 D. & C. Rep. 139. On exceptions to the readjudication, the court in banc again considered the questions and reached the conclusion resulting in the decree of distribution from which these four appeals were taken; the opinion of the court, also written by STEARNE, J., for a unanimous court, is reported in 28 D. & C. Rep. 147, as *Albertson's Estate (No. 2)*.

We think the record shows such thorough consideration of the questions raised on the appeals that we can profitably add nothing* to what was said in finally disposing of the exceptions. The authorities cited justify the conclusion that, by his will, testator intended to give what was not needed by his widow to his named children for life with gifts over absolutely to their respective issue. The provision quoted above, read in connection with the word "children", as used earlier in the residuary clause, was properly held to require the equal division of the share, now for distribution, between William's daughter, Margaret Beitel, on the one hand, and his two grandchildren, issue of a deceased child, on the other. We are also satisfied, in the circumstances stated in the opinion of the learned court in banc, that, on the authorities relied on, equalization of the shares was right.

The decree is affirmed, costs to be paid out of the fund for distribution.

---

* We are constrained to add that our understanding of what was decided in *McGlensey's Estate*, 37 Pa. Super. Ct. 514, differs from the view apparently held by the learned court below: 28 D. & C. Rep. at page 151.