## Seibert Trust

*Townsend, Elliott & Munson,* for accountant.

*James C. Welsh,* for William Seibert Sampson, claimant.

*Saul, Ewing, Remick & Saul,* for Robert M. Seibert, claimant.

ALESSANDRONI, J., September 26, 1949.—The Provident Trust Company of Philadelphia has filed two accounts as the remaining trustee under deed of trust executed by Robert Samuel Seibert, on March 24, 1913. The first account is a statement of the transactions of the trustee under the trust for the benefit of the First Methodist Episcopal Church of Mount Union and Edith R. Dunkle, and the second under the trust for the benefit of William Seibert Sampson.

The same question is involved in each and the facts are not in dispute. It appears from the statements of proposed distribution that Robert Samuel Seibert

named the Provident Life and Trust Company of Philadelphia (now Provident Trust Company of Philadelphia) and Gertrude Woodcock Seibert, trustees, and directed them to pay him the entire income during his life and upon his death, after paying certain sums out of the principal, all of which payments have long since been made, to pay specified monthly sums to five life tenants, being his widow, brothers, sister and a nephew. The deed of trust further provided that upon the death of the sister, the trustees were to pay $25 per month to William Seibert Sampson if he lived continuously with and remained in the family of the sister during her life. The widow was entitled to receive the share of income payable to any beneficiary who predeceased her, and, at her death, the trustees were directed to divide the income among the surviving life tenants until the time set for distribution of principal. At the death of the widow, it was provided that one half of the monthly sum of $300, to which she had been entitled, should be divided among the First Methodist Episcopal Church of Mount Union, Edith R. Fisher (later Dunkle), and Lucy Love Wolfgang. At the death of the latter two, the share of each was to be paid to the church, so that ultimately it would secure the sum of $150 per month perpetually. The balance of the income, which the widow had been entitled to receive during her lifetime, was directed to be divided among the two brothers, sister and nephew of the settlor until a time set for the distribution of the principal.

The settlor ordered a distribution of principal upon the death of the last survivor of his brothers, sister, and widow, directing, however, that suitable provision be made for the perpetual monthly payments to the church, and the monthly payments for life to William Seibert Sampson, Edith R. Fisher and Lucy Love Wolfgang. The settlor provided that the principal to

be distributed at that time was to be divided among the persons who, under the intestate laws of Pennsylvania, "would have been entitled to take and receive the same as the then living heirs-at-law of said Robert Samuel Seibert if he had then died . . . intestate . . .".

In providing for distribution, settlor directed that the share of principal Robert Milton Seibert, his nephew, might receive as a survivor, should be held in trust for him, and after his death be divided among the then living heirs at law of settlor according to the intestate laws. Upon the receipt of the distributee's share of principal, however, the specified monthly payment to him was to cease.

Settlor died on May 23, 1913, shortly after executing the deed of trust. In 1935 all the individuals entitled to receive monthly payments having then deceased, with the exception of Robert Milton Seibert, William Seibert Sampson, and Edith R. Fisher (now Dunkle), principal became distributable in accordance with the provisions of the trust. An account was filed by the trustees, and in the petition for distribution, it was suggested that, after retention of a sum sufficient to pay the monthly benefit to the church, William Seibert Sampson and Edith R. Fisher, the parties entitled to distribution as the heirs at law of settlor, determined as of the date of death of the last survivor, were his nephew, Robert Milton Seibert, three children of a deceased brother and four grandchildren of a deceased brother. The petition further averred that settlor's sister died March 15, 1934, without issue, but that she had adopted William Seibert Sampson on August 30, 1929.

The court accordingly ordered distribution of the principal in accordance with the petition, and reserved out of the fund sufficient amounts to insure monthly payments to the church, Edith R. Dunkle and William

Seibert Sampson, in the amounts specified in the deed of trust. Our late brother Lamberton, J., foresaw at that early time the era of declining returns on invested capital, and ordered the trustees to retain a sufficient amount of principal so that the monthly payments would be assured at a yield of three percent on the principal. No provision was made for the payment of any share of the principal to the adopted son of settlor's sister since, at that time, the decisions of our appellate courts interpreting the provisions of the Intestate Law did not recognize an adopted child as a distributee under such circumstances.

Fortunately, by reason of the successful management of the trust, there is presently an accumulation of excess income, and we are asked to determine to whom this sum is payable and, more particularly, whether the adopted son of the deceased sister of settlor is entitled to share in the distribution.

All parties in interest have received notice of the filing of this account and have waived an income account prior to December 11, 1947. All parties who might have an interest in the fund now before this court for distribution are the same as the parties who were before this court upon the filing of the account in 1935. The fund is not subject to the payment of any inheritance tax.

Counsel for William Seibert Sampson contends that he was omitted erroneously from distribution as an heir of settlor in the accounting filed in 1935 and under the doctrine of equalization asks that the fund now before this court, as well as all excess income in the future, be awarded to him until the alleged inequality is corrected. This claim is resisted by settlor's nephew and one other heir on several grounds which we shall discuss ad seriatim.

It is initially contended that the former decree of distribution was not the result of an error at law and

that William Seibert Sampson was not an heir of settlor entitled to share in the distribution, since he was adopted after the date of the deed of trust and the death of settlor. In ascertaining the intent of settlor, it appears that when he created the deed of trust he had no issue and clearly did not contemplate the possibility of issue. He provided primarily for his widow and secondarily for his brothers and sister. Minor provision was also made for his nephew as well as William Seibert Sampson whom he described as a son of his cousin who had been raised by his sister. The intervening life tenancies created by this deed of trust establish the persons whom settlor wished to favor to the extent of his bounty. It is clear that after their deaths, settlor, having provided for the charitable bequest, determined that the distributees should be ascertained in accordance with the intestate laws of the Commonwealth of Pennsylvania. This, he assumed, would provide the necessary machinery for an equitable distribution among an unascertained, and at the time of the creation of the trust, an unascertainable class of persons. He had no way of knowing their identity and therefore carefully and unambiguously provided that his trustees at the time of distribution were to assume that on that date he, settlor, had died intestate, and upon that assumption they were directed to make distribution in accordance with the intestate laws. Not only was the identity of the "heirs-at-law" to be ascertained on that date, but the Intestate Law in force and effect on the same date was expressly designated as the operative statute. It is immaterial, therefore, to determine whether settlor believed William Seibert Sampson would qualify as a member of the class of persons entitled to share in the distribution of principal. Our inquiry is foreclosed by the certainty with which the class is defined. To construe the provisions of this deed of trust in any other fashion

would require rewriting the instrument. He clearly stated that on the day of distribution "the then living heirs-at-law" were to receive the principal as if he, settlor, "had then died . . . intestate". We know of no way in which settlor could have stated his intention more unequivocally. See Warne's Estate, 302 Pa. 386. We cannot, as counsel urges, employ judicial interpretation where the words used are plain and unambiguous: Scott's Trust, 322 Pa. 1, 16.

The distribution in 1935 followed the Intestate Act of June 7, 1917, P. L. 429, as then judicially interpreted. The right of adopted children to inherit is purely statutory, and prior to the Intestate Act of June 7, 1917, that right was governed by the Act of May 4, 1855, P. L. 430, and the supplementary Act of April 13, 1887, P. L. 53. These statutes did not give to adopted children the right to inherit from the collateral relatives of their foster parents: Burnett's Estate, 219 Pa. 599. It is therefore true that when this deed of trust was created and when settlor died, William Seibert Sampson as an adopted child had no right to share in the distribution. Moreover, he was not adopted until 16 years after settlor's death. The provisions of the deed of trust, however, called into operation the intestate law in force and effect in 1935 so that we are not concerned, because of those very provisions, with the date of death of testator or the Intestate Law in effect on that date.

Even in 1935 it was generally believed from a reading of the opinions of our appellate courts that adopted children had no right to inherit from collateral relatives of their foster parents under the Intestate Act of 1917. See Reamer's Estate, 315 Pa. 148. Predicated upon that generally prevalent opinion, distribution was made by this court. Thereafter, in 1937, Cave's Estate, 326 Pa. 358, unequivocally held that adopted children have the same right of inheritance

from collateral kindred of their adoptive parents as a natural child of such parents would have. See also Fisher v. Robison, 329 Pa. 305; Reamer's Estate, 331 Pa. 117. Although there is merit to the contention that the rule announced in these decisions applied to persons dying intestate after the effective date of the Act of 1917 and leaving among their next of kin persons adopted by collateral kindred, we do not believe that such a distinction is applicable to the present deed of trust because of its clear provision that the trustees were to determine distribution as if the settlor had died intestate on the day designated by the deed of trust for the distribution of principal.

In the second place it is contended that the matter is res adjudicata and that William Seibert Sampson is estopped from raising any question concerning the award made in 1935. It is true that William Seibert Sampson had notice of the filing of the account and an appearance was entered on his behalf, and that he did permit a fund of approximately $60,000 to be distributed, one half to Robert Milton Seibert in trust and the remaining half to the heirs of James Alexander Seibert. As to the funds so distributed, unquestionably the rights of William Seibert Sampson are foreclosed. It is our opinion, however, that the accumulation of excess income, which is the fund now before this court for distribution and which arises because the trusts for the charity, for Edith Dunkle and for William Seibert Sampson have yielded an income greater than that required to pay the designated monthly sums, is a new and separate fund from that distributed by the court in 1935. The decree of distribution entered at that time does not constitute a determination of the rights of the parties, but is merely limited to preserving from attack the fund which was awarded: Reed's Estate, 237 Pa. 125; Kellerman's

Estate, 242 Pa. 3; Laughlin's Estate, 336 Pa. 529; Edwards Estate 360 Pa. 504.

Finally, it is contended that if William Seibert Sampson is entitled to a distributive share as an heir at law of settlor, his right to monthly payments under the trust set up for his benefit should be terminated. The doctrine of equalization of shares and the right of this court to correct inequalities in prior distribution is not attacked: Albertson's Estate, 329 Pa. 372. It is argued that in providing for a similar small annuity for his nephew, Robert Milton Seibert, settlor, having in mind that his nephew might some day share in the distribution of principal, provided that when such a distributive share was set apart and held in trust for his nephew, the monthly payment should cease. The deed of trust does not provide for the cessation of monthly payments to William Seibert Sampson, because, it is contended, settlor never intended that that annuitant would share in the distribution of principal. It is further contended that to permit this adopted child to receive these monthly payments and, in addition, to share in the distribution would result in a gross inequity.

We cannot so amend the deed of trust. It may be true that settlor did not anticipate that William Seibert Sampson would share in the distribution of principal, but he clearly provided in the deed of trust the method for ascertaining those distributees, and as a result of the application of that method it is clear that he does so share. Because the result was unforeseen is not sufficient grounds to strike down an expressed life estate. Moreover, it appears that each group of distributees in 1935 received $29,524.18. Had Cave's Estate, supra, been decided prior to that decree of distribution there would have been three groups of distributees each of whom would have received $19,-682.79. The latter sum is the amount which William

Seibert Sampson should be entitled to if equalization can be effected. There is presently a fund of $5,456.38 available for distribution, which, in accordance with this opinion, will be awarded to William Seibert Sampson and as a result of which he will still suffer up to this time a loss of $14,226.41. Even if we consider the fact that he has received the sum of $300 per year for the last 14 years, it is apparent that his position is still quite disadvantageous because of the distribution made in 1935. Moreover, we cannot lose sight of the fact that he has lost the use of $19,682.79 during the intervening 14 years as well as the relative value of that sum in 1935 as opposed to its value at the present time.

We therefore conclude that William Seibert Sampson is entitled to an award of the entire fund now before this court to be applied against the sum he would have received had the proper decree of distribution been made by this court in 1935. The trustee has asked for credits in the sum of $9.50 for the costs of filing the account and statement of proposed distribution and the affidavits thereto in the trust for the benefit of William Seibert Sampson and also for counsel fee in the sum of $50. There is no objection to the payment of said sums and the same are hereby awarded. In the trust for the benefit of the First Methodist Episcopal Church of Mount Union and Edith R. Dunkle credits are asked in the sum of $12 for the costs of filing the account and statement of proposed distribution and counsel fee in the sum of $200. No objection has been entered to the payment of said sums and the same are hereby awarded. Each of the accounts has been examined and neither this court nor any of the parties at interest, all of whom have had notice, have filed any objection thereto. Accordingly, this court makes the following

*Order*

And now, to wit, September 26, 1949, the first account of the Provident Trust Company of Philadelphia, remaining trustee for William Seibert Sampson, and the first account of the Provident Trust Company of Philadelphia, remaining trustee for the First Methodist Episcopal Church and Edith R. Dunkle, are confirmed and said trustee is directed to distribute to William Seibert Sampson all accumulations of excess income in each of the trusts and to file schedules of distribution stating the income account to date and reflecting the distribution ordered herein.