### Cadwalader Estate

Before Sinkler, P. J., Klein, Bolger, Ladner, Hunter and Boland, JJ.

*R. Sturgis Ingersoll,* for exceptants.

*Maurice Heckscher* and *Charles C. Savage, Jr.,* contra.

BOLAND, J., October 7, 1949.—This matter is before the court upon exceptions of the widow and children of John Cadwalader, Jr., who was one of the four children of John Cadwalader. The latter died March 11, 1925, having first made his will dated January 22, 1920, and a codicil on January 27, 1920. The will created a residuary trust to pay the net income to his wife for life, and upon her death to divide the net income equally among his four children, Sophia Cadwalader, Mary Helen Cadwalader, John Cadwalader, Jr., and Thomas Francis Cadwalader, during their respective lives, with certain remainders.

The widow of testator and first life tenant died December 29, 1937. John Cadwalader, Jr., predeceased his mother, having died June 10, 1934, testate, leaving a widow and three children, all of whom are now of age. John Cadwalader, Jr., by his will, exercised a limited power of appointment by giving his share of income from his father's estate in the following proportions: Two fifths to his widow, and one fifth each to his three children for the duration of the trust. Had it not been for the exercise of the limited power of appointment conferred by the codicil of January 27, 1920, the three

children would have received all the income of one fourth of John Cadwalader's residuary estate.

Mary Helen Cadwalader died October 23, 1945, unmarried and without issue, leaving a will bequeathing her entire estate to her sister, Sophia, and including an attempt to dispose of her one fourth of income from her father's estate to Sophia. As this exercise of her limited power of appointment was contrary to the provisions and limitations of her father's codicil, it was ineffective, thus creating the problem presented to the auditing judge for a proper disposition of her one fourth of income.

Sophia Cadwalader, unmarried daughter, and Thomas Francis, a son, of the original decedent, survive.

Subsequent to the widow's death in 1937, the net income was paid to Sophia, Mary Helen and Thomas Francis, one fourth each, and the remaining fourth to the widow and children of John, Jr., in the proportions appointed by the latter's will and codicil.

The question submitted to the auditing judge is whether, under the terms of the will of testator, the widow and children of John Cadwalader, Jr., may share in distribution of the one fourth of income released by the death of Mary Helen Cadwalader, or whether the share in question should go to augment the shares of the two other children, Sophia and Thomas Francis Cadwalader, thus adding a one-eighth share of income to the one fourth they are presently receiving.

The auditing judge concluded that the latter is the proper mode of distribution. The adjudication of this question of construction was made by the auditing judge in a partial adjudication filed December 31, 1948, and reaffirmed by him in his final adjudication of May 20, 1949. Exceptions were filed by the widow

and children of John Cadwalader, Jr., the deceased son of testator.

The matter was ably argued and excellent briefs submitted by counsel for both sides, but upon careful consideration we are of opinion that the auditing judge did not err in his conclusion.

It is to be noted at the outset that we are determining only the present disposition of the one-quarter share of income paid to Mary Helen Cadwalader, daughter of testator, during her lifetime, and this determination is without prejudice to the rights of any of the parties at the respective deaths of Sophia and Thomas. This is in conformity with our practice: Willard's Appeal, 65 Pa. 265; Hano's Estate, 8 Dist. R. 353; Glanding's Estate, 15 Dist. R. 985.

The will of testator placed his residuary estate in trust "to pay to her (widow) the net interest and income of my entire estate so long as she shall live. And upon the death of my said wife to hold the said property in Trust, to divide the net interest and income equally among my four children, Sophia Cadwalader, Mary Helen Cadwalader, John Cadwalader, Junior, Thomas Francis Cadwalader, during their respective lives and upon the death of either or both of my said daughters to hold their said shares for the benefit of the survivors in equal shares during their respective lives and upon the death of either or both of my said sons to hold their respective shares as well as the shares of either or both of my said daughters if they shall have died for the benefit of my grandchildren who may be living at the death of all of my children or for the issue of any grandchild who may have died leaving issue at the death of my surviving child. My purpose being that my estate shall vest absolutely in my grandchildren or their issue who may survive my four children. Upon the death, however, of either of my said sons, the share of the income that they have received

at the time of their death shall be held by the Trustees of my estate for the benefit of the child or children that either of my sons so dying may leave during the life of my remaining children."

The pertinent paragraph of the codicil which counsel for exceptants asserts as modifying the will to assure the widow and children of John Cadwalader, Jr., a share in this income of Mary Helen Cadwalader, is as follows:

"I think it right that my children should have a limited testamentary power of appointment over their shares of my estate, I therefore now provide that each and all of my children may by any last will and testament make such distribution of his or her share of my estate real and personal to and among their wife or wives, husband or husbands, children and nieces and nephews in such shares or proportions and in such way either by direct payments and distribution or by creating trusts for such wife or wives, husband or husbands, children or nieces and nephews for and during their respective lives."

We are thoroughly conscious of the now well established general rule that in the absence of contrary evidence of a different intention, survivorship will be taken as referring to the death of testator, and that the words "survivor" or "surviving" will be understood as the equivalent of "other", where in any other sense it would lead to an intestacy or to inequality among those standing in the same degree of relationship to testator, or to a distribution not in accordance with the general scheme of the will in its entirety: Fox's Estate, 222 Pa. 108 (1908) ; Nass' Estate, 320 Pa. 380; Albertson's Estate, 329 Pa. 372; Galli's Estate, 340 Pa. 561. In Handy's Estate, 314 Pa. 61 (1934), the court, writing of this at page 62, stated:

"This canon of construction was clearly enunciated by Penrose, J., in Sterling's Est., 24 W. N. C. 495,

where, disregarding the later English cases, he said that in the absence of controlling evidence of a different intention, the survivorship will be understood as referring to the death of the testator. Of course, *the testator's intention must always govern,* but the general rule is as stated." (Italics supplied.)

It is to be noted that, in these cases and others submitted by counsel for exceptants to sustain his argument, the decisions were rendered in connection with the distribution of principal, and the courts held that to carry out the true intent of testator as determined by the terms of his will, the words "survivor", "survivors" or "surviving", as used therein referred to testator's death. The intent of this testator, as the will and codicil show, is to make his own children, as recipients of the income, the primary object of his bounty until death of the survivor of them, in preference to grandchildren or remoter issue.

The cases cited above were all decided upon the particular wording of their respective instruments.

Let us then examine the will and codicil of this testator. After first providing that the said residuary estate shall be held in trust and the net interest and income be paid to the widow as long as she shall live, he then provides that it shall be held in trust "to divide the net interest and income equally among my four children, Sophia Cadwalader, Mary Helen Cadwalader, John Cadwalader, Junior, Thomas Francis Cadwalader, during their respective lives." He then continues, without any punctuation: "and upon the death of either or both of my said daughters to hold their said shares for the benefit of the survivors in equal shares during their respective lives and upon the death of either or both of my said sons to hold their respective shares as well as the shares of either or both of my said daughters if they shall have died for the benefit of my grandchildren who may be living at the death of all

of my children or for the issue of any grandchild who may have died leaving issue living at the death of my surviving child." It is to be noted that he made no provision up to this point for the possible issue of his daughters. The will then continues: "My purpose being that my estate shall vest absolutely in my grandchildren or their issue who may survive my four children." This clearly purports a vesting of principal after the last child has died.

Continuing, he provides:

"Upon the death, however, of either of my said sons, the share of the income *that they have received at the time of their death* shall be held by the Trustees of my estate for the benefit of the child or children that either of my sons so dying may leave during the life of my remaining children."

The clear intent of testator, as above expressed, is that the share of income to be received by a grandchild or grandchildren of a specific son of testator shall be limited to that amount or quantum that the son was receiving up to the time of his death.

With respect to the daughters, testator sought, apparently, to provide for the deficiency (in the possible event of their marriage, and leaving issue at their deaths) by executing the codicil which gave the daughters (and the sons) a limited power to dispose of the income which each had been receiving during life.

More correctly appropriate to the decision of this case would be the precedent established in Dutilh's Estate, 80 Pa. Superior Ct. 134 (1922), where the Superior Court sustained the decision of Judge Gest in a per curiam opinion. In that case Judge Gest, in dismissing exceptions to the adjudication, held that the share of the income payable to a daughter who died unmarried should be paid to the surviving daughter and not be divided between her and the children of

the other deceased sister who predeceased the unmarried sister. The wording of the Dutilh will is similar in language to the instant instrument, particularly that part which provided in the event that either of the said daughters should die leaving a child, children, or the issue of any deceased child living at the time of her death, "the share of income of such deceased daughter shall be paid over and appropriated to . . . such child, . . . such issue however, taking or receiving only the parent's share till the time for distribution of said trust fund, namely, the death of the survivor of my said daughters."

To the same effect was Craig's Estate, 24 Dist. R. 851 (1915), where Judge Gest, speaking for this court, awarded the disputed income to the only surviving child of testator. In Walter's Estate, 18 D. & C. 431 (1933), this court (Stearne, J.) relying upon Dutilh's Estate, supra, in a similar situation, held that the share of a daughter dying without issue went to a surviving daughter, and that it was clearly the intent of testator to exclude from this income the issue of the deceased daughter. See also Worst v. DeHaven et al., 262 Pa. 39 (1918), where there is also a remarkable similarity of words in the will and wherein the Supreme Court sustained the award of income to the three surviving children of testator to the exclusion of the issue of a fourth child who had predeceased the life tenant.

It is unnecessary to analyze the cases relied upon by counsel for exceptants, all of which had to do with distribution of principal. This has been ably done by the auditing judge. Suffice to say that they do not in our opinion affect the present question, which is one concerning the distribution of income. As to this we think the language of the will is clear. Were we to need additional proof that our conclusion is correct, we need but observe that there is a negative prohibi-

tion in the instrument that issue of deceased sons may not share in income except to the extent of their father before them. This clause provides:

"Upon the death, however, of either of my said sons, the share of the income *that they have received at the time of their death* shall be held by the trustees of my estate for the benefit of the child or children that either of my sons so dying may leave during the life of *my remaining children.*"

Attention is called to Kelly's Estate, 193 Pa. 45 (1899), where testator gave his estate in trust for the benefit of his brother and sister, with power of appointment over remainder. The dispute over the income there arose when the brother died, having exercised his power of appointment. The court, inter alia, held that the trustee was entitled to retain the whole of the fund after the death of the brother, paying to the sister for life the entire income.

In holding that the survivorship, in this instance, refers to the deaths of the respective life beneficiaries, we effect no intestacy, nor does it cause an inequality not clearly prescribed or permitted by testator himself. By the codicil testator himself permits a child to determine unequal shares of income to grandchildren. And in fact John Cadwalader, Jr., did just that in giving two fifths of his income to his own wife, and one fifth each to his three children.

Exceptants emphasize their contention that the words of the codicil modified the entire dispositive provisions of the will; that testator, in employing the word "shares" in the codicil, authorized his children to dispose of principal. We cannot agree with counsel for exceptants. While testator, by codicil, provided that each and all of his children "may . . . make such distribution of his or her *share* of my Estate real and personal", the only *"share"* he gave by will was of income. A codicil changes a will only so far as the

changes are expressly directed or necessarily implied: Wears' Estate, 25 Dist. R. 30 (1915). A will and codicil must be construed together and a codicil will be construed to disturb the dispositions of the original will only where its provisions are plainly inconsistent with the will: Moore Estate, 347 Pa. 276 (1943); Braun Estate, 358 Pa. 271 (and cases there cited), and at page 278 where the court said: "The general scheme of a will is not to be overborne by modifying directions that are incomplete, ambiguous, or equivocal."

The use of the word "share" in the codicil does not enlarge the estate, interest, or share, that testator gave by his will. As the court said in Baugh's Estate, 288 Pa. 308 (1927), at pages 310-11:

"True, there is a presumption that a codicil is intended to make a change in the will . . . but the two must be construed together and the codicil will not disturb the disposition of the original will further than is absolutely necessary for the purpose of giving it effect: Vernier's Estate, 282 Pa. 194;".

In the will, constant use of the word "share" is made in the disposition of *income*. For instance: "to divide the net interest and income equally among my four children . . . . during their respective lives and upon the death of . . . . my said daughters to hold their *shares* for the benefit of the survivors . . . . and upon the death . . . . of my said sons to hold their respective *shares* as well as the *shares* of . . . . my said daughters . . .".

We have given equal and full consideration to the codicil and the will. We agree that a codicil should not be construed so as " 'to disturb or change the dispositions of a will further than is necessary to give effect to the provisions of the codicil': see Chauncey's Estate, 335 Pa. 73, 76" (quoted with approval in Braun Estate, supra).

Since the general intent of the will itself has been determined above, we can find no language in the codicil that changes the general intent.

The exceptions are dismissed and the adjudication is confirmed absolutely.