## Austin Estate

*Butler, Beatty, Greer & Johnson, George T. Butler, Charles C. Townsend* and *Vincent P. Desmond,* for accountants.

*John B. H. Donaldson* for Carl C. Austin, distributee.

*John R. Graham* and *W. Horace Hepburn, Jr.,* for Judith McCall Austin, distributee.

VAN RODEN, P. J., September 16, 1950.—Decedent's widow and son are presently entitled to share equally in his distributive estate, which is in excess of $250,-000. The parties have narrowed the ambit of their differences to an item involving only $443.88. While at first blush this might appear to be de mininis, the point of law involved is of real importance, and the court will dispose of the matter on the basis of substantive merit.

The question here involved is whether a distributee is properly chargeable with interest on a portion of the residue of an estate distributed in advance of the filing of the schedule of distribution. In the instant case

distribution was made to the distributees in unequal amounts and the accountants have charged interest on such prepayments in order to equalize the ultimate distribution. Such interest, computed at the rate of four percent per annum from the date of payment of each item of principal until the date of the filing of the schedule of distribution, amounts to $2,315.18 on distribution to the widow, and to $1,427.42 on distribution to the son, making a total of $3,742.60, which accountants have added to the income earned by the estate, of which each distributee is entitled to one half, and have then subtracted from each distributive share the respective amount of interest on advances of principal. Thus, accountants have proposed to charge the widow with $887.76 more interest than is charged to the son, thereby reducing the actual distribution of earned income to her to the extent of $443.88.

There appears to be no express authority in Pennsylvania for the charging of interest on portions of principal distributed in advance of final settlement of the estate. In Smith Estate, 350 Pa. 418 (1944), in considering the somewhat analogous situation of interest on advancements made by a testator during his lifetime, it was held that the whole income from the residuary estate which accrues during the course of administration of the estate should be divided equally among the sharers without deduction of advancements in the calculations, in the absence of any provisions in the will providing otherwise. It was stated, by way of dictum, that interest may be charged after the legal period for the settlement of the estate "or from the time when the other heirs received the balance due". Thus, in Jenkins' Estate, 4 Kulp 46 (1885), where the settlement of a large estate was delayed for many years, and in his account the administrator was charged with interest on the entire fund in his hands, and it

appeared that he had advanced to the heirs unequal sums at long intervals apart, on final distribution of the fund accounted for the heirs were charged interest on the sums advanced to them for the double purpose of offsetting the interest which had been charged against the administrator, and to equalize distributive shares of the heirs; that is, the advances made to the heirs were treated as loans, by the administrator, of the funds in his hands. Similarly, in Albertson's Estate, 329 Pa. 372 (1938), and in Seibert Trust, 71 D. & C. 76 (1949), where partial distribution had been made many years before final distribution and on such final distribution it was determined that certain heirs had been improperly omitted or excluded from the previous distribution, equalization of the shares upon final distribution was approved. In the instant case, however, there is no indication that the settlement of the estate has been unduly protracted, nor is there any evidence that the widow sought to derive any particular advantage over the son by receiving a greater share of the advance partial distributions. An analysis of the cash payments made by the executors to the distributees during the period of administration indicates that such distributions were fairly equal with the exception of a distribution of $27,000 made to the widow on September 16, 1948. The court is informed that the purpose of such payment was to enable her to purchase a home. It is conceded that she was not notified at the time of such payment that she would be expected to pay any interest in connection therewith. Later, on April 20, 1949, a payment of $26,710.93 was made by the executors on account of the son's Federal estate tax liability. Thus, it will be seen that the chief point of difference in the distribution arises from the fact that the widow had the advantage of approximately $30,000 for about a half year before the son received a similar share. However, the son, who is one of the executors, raised no

objection to the widow receiving the partial distribution and, in fact, acquiesced therein. Similarly, the son might have made corresponding advances to himself without any objection from the widow. The fact that he chose to defer such advances until needed for payment of the Federal estate tax does not ipso facto entitle him to interest for the interim period.

Distribution of this particular estate was fairly free from complications, since the distributees elected to take all securities (with the exception of Government bonds) in kind. Without the liquidation of any income-producing securities whatsoever, the executors had available for distribution the sum of $47,215.68 in cash, and raised the additional sum of $48,519.28 by the sale of 2½ percent government bonds. Of the total cash for distribution, amounting to $95,734.96, $48,-108.77 was actually distributed to the widow and $44,-598.08 actually distributed to the son. No evidence has been submitted to the court which would show that the Government bonds were sold for the express purpose of securing cash to make distribution to the widow. On the contrary, it appears that such bonds were sold in normal liquidation and in accordance with the agreement of the parties. The net result, therefore, is that the son has failed to convince the court that the distribution policy of the accountants has resulted in any real loss to him, nor has he convinced the court that the relatively small inequality in advance distributions as between the widow and himself has resulted in any undue advantage to her. Accordingly, the court holds that under the circumstances of this particular case, the accountants should not properly charge interest on partial distribution of principal made in advance of final settlement and that income derived during the course of administration from the unliquidated securities should be paid unto the distribu-

tees in equal shares without regard to previous principal cash distributions, and exception no. 2 to the schedule of distribution is hereby sustained.

The remaining exception to the schedule of distribution relates to a credit claimed by the accountants for commissions at the rate of five percent on income collected since the date of the last accounting, which commission amounts to $461.08. It is noted that such commissions were charged only on income actually received by the accountants during the period from the filing of the account until the filing of the schedule of distribution. The adjustments made by the accountants with respect to the attempted equalization of advances of principal cash were not included in income for the purpose of calculating accountants' commissions. It follows, therefore, that accountants were fully entitled to the commissions so charged, and exception no. 1 to the schedule of distribution is hereby dismissed.

Accordingly, the court enters the following

### Decree

And now, to wit, September 16, 1950, a schedule of distribution having been filed by the accountants and written exceptions having been filed with respect thereto on the behalf of Judith McCall Austin, widow of decedent, it is hereby ordered, adjudged and decreed as follows:

1. Exception no. 1 is hereby dismissed.

2. Exception no. 2 is hereby sustained, and the item of $3,742.60, appearing on page 19 of the schedule of distribution and referred to and described as "4% interest from 2-26-48 to 5-8-50 on advances of principal cash in distribution to Judith McCall Austin and Carl C. Austin Jr" is hereby deleted and stricken therefrom; the item of $2,315.18 appearing on page 22 of the schedule of distribution and described as "4% interest from 2-26-48 to 5-8-50 on advances of princi-

pal" to Judith McCall Austin, is hereby deleted and stricken therefrom; the item of $1,427.42 appearing on page 24 of the schedule of distribution and described as "4% interest from 10-28-48 to 5-8-50 on advances of principal" to Carl C. Austin, Jr., is hereby deleted and stricken therefrom, and accountants are hereby directed to make distribution of all income received from unliquidated securities unto Judith McCall Austin and Carl C. Austin, Jr., in equal shares, without regard to advance principal cash distributions.

3. As so corrected and modified, the schedule of distribution is in all other respects hereby approved.